## Eckels *v.* Weibley, Appellant.

*Equity—Injuctions—Nuisance—Threatened danger to health and life—Reasonable use of property—Stock yard—Residential district.*

1. While it is true that an injunction will not issue to allay mere fears and apprehension, nevertheless, if it be shown that there is reasonable and just ground to apprehend the establishment of a nuisance threatened by the defendant and which he has power to commit, and it is reasonably certain that the health and comfort of those complaining will be impaired by the threatened act, the writ will go out.

2. An injunction restraining a threatened nuisance properly issues where the court finds as facts that the defendants were about to engage in the horse and cattle business in an exclusively residential section of a borough, but not yet compactly built up; that for the purpose of doing so they had erected on a lot owned by them a shed 140 feet in length and fourteen feet wide, and were about to build a barn in connection with it sixty feet long and forty feet wide; that the capacity of the proposed stock yard would be for from forty to fifty head of cattle and for from thirty to thirty-five head of horses; that the defendants proposed to deal in western cattle and horses, to be delivered to them by rail, and such delivery would necessitate a practically constant driving of both cattle and horses in and out of the yard and over the public streets of the borough; that they proposed to occasionally hold public sales of cattle and horses on their premises and to exhibit and sell them on the street, on which their yard fronted; that the operation of the yard as proposed by the defendants would result in the breeding of great quantities of flies, would engender noxious odors and occasion disturbance and noise, would render the enjoyment of the plaintiffs' property uncomfortable and be detrimental to their health; that the use of their property by the defendants for the large business which they proposed to carry on in the sale and exchange of cattle and horses was an unreasonable use of it, and it was selected by them for the purpose of carrying on their business for the sole reason that it was near their residences, and their business could, therefore, be more conveniently conducted by them at that point; and that the operation of the proposed yard would work irreparable damage to the complainants by rendering their homes uncomfortable and endangering their health.

Argued April 25, 1911. Appeal, No. 300, Jan. T., 1910, by defendants, from decree of C. P. Cumberland Co., in Equity, March T., 1909, No. 2, granting injunction in

case of Mervin Eckels et al. v. Walter Weibley and Joseph
Cockley. Before FELL, C. J., BROWN, MESTREZAT,
STEWART and MOSCHZISKER, JJ. Affirmed. ·

Bill in equity to restrain a threatened nuisance. Before
SWOPE, P. J., specially presiding.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* among others was in the decree of the
court.

*Conrad Hambleton,* with him *Jasper Alexander* and *John
W. Wetzel,* for appellants.—The general rule of law is that
equity has jurisdiction to restrain the creation and con-
tinuance of a private nuisance if the rights of a suitor are
clear and certain; but an injunction will not be granted
until· the facts are established by the verdict of a jury, if
they are disputed: Woodroffe v. Hagerty, 35 Pa. Superior
Ct. 576; Baer v. Wilmoth, 39 Pa. Superior Ct. 74; New
Castle v. Raney et al., 130 Pa. 546; Mowday v. Moore, 133
Pa. 598; Rhea v. Forsyth, 37 Pa. 503; Wood v. McGrath,
150 Pa. 451.

That a stable will prove a nuisance is not to be presumed
and consequently an injunction will not lie to restrain its
erection: Evans v. Fertilizing Co., 160 Pa. 209; Fischer v.
Sanford, 12 Pa. Superior Ct. 435; Alexander v. Stewart
Bread Co., 21 Pa. Superior Ct. 526; Oehler v. Levy, 234
Ill. 595 [85 N. E. Repr. 271, 17 L. R. A. (N. S.) 1025].

*Paul Willis,* with him *F. B. Sellers, Jr.,* for appellees.—
When the bill is to enjoin a threatened, as distinguished
from an existing nuisance, from the nature of the case re-
quirement of a previous trial at law cannot be applied:
Sterling v. Littlefield, 97 Maine, 479 (54 Atl. Repr. 1108);
McArthur v. Kelly, 5 Ohio, 139; Wente v. Commonwealth
Fuel Co., 232 Ill. 526 (83 N. E. Repr. 1049); Common-
wealth v. Stevens, 178 Pa. 543; United States v. Luce,
141 Fed. Repr. 385; Wahle v. Reinbach, 76 Ill. 322.

OPINION BY MR. JUSTICE BROWN, July 6, 1911:

The injunction appealed from followed findings by the court below that the defendants were about to engage in the horse and cattle business in an exclusively residential section of the borough of Carlisle, but not yet compactly built up; that for the purpose of doing so they had erected on a lot owned by them a shed 140 feet in length and 14 feet wide, and were about to build a barn in connection with it 60 feet long and 40 feet wide; that the capacity of the proposed stock yard would be for from 40 to 50 head of cattle and for from 30 to 35 head of horses; that the defendants proposed to deal in western cattle and horses, to be delivered to them by rail, and such delivery would necessitate a practically constant driving of both cattle and horses in and out of the yard and over the public streets of the borough; that they proposed to occasionally hold public sales of cattle and horses on their premises and to exhibit and sell them on Graham street, on which their yard fronted; that the operation of the yard as proposed by the defendants would result in the breeding of great quantities of flies, would engender noxious odors and occasion disturbance and noise, would render the enjoyment of the plaintiffs' property uncomfortable and be detrimental to their health; that the use of their property by the defendants for the large business which they proposed to carry on in the sale and exchange of cattle and horses was an unreasonable use of it, and it was selected by them for the purpose of carrying on their business for the sole reason that it was near their residences, and their business could, therefore, be more conveniently conducted by them at that point. The argument of counsel for appellants, in pressing for a reversal of the decree, is largely directed to an effort to show that the foregoing facts ought not to have been found. After a review of all the testimony we have not been convinced that error was committed in any of the findings complained of. There was testimony in support of all of them, and it was for the court below to weigh the evidence and to determine what facts had been

established by it. This the learned trial judge did, and his eighteenth finding of fact is that he had arrived "at the clear and certain conclusion, from all the evidence in the case, that the operation of the proposed yard would work irreparable injury to the complainants by rendering their homes uncomfortable and endangering their health."

The second complaint of the appellants is that the injunction was issued before the existence of a nuisance maintained by them had been established as a fact by a trial at law. At the time the bill was filed no injury had been sustained by the appellees. Nothing had been done by the appellants for which an action at law could have been brought. Actual irreparable damages, actual depreciation of property did not exist. It was to prevent these consequences and the perpetration of a wrong, for which no adequate remedy existed at law, that this proceeding was properly instituted: Wier's App., 74 Pa. 230; Joyce on Nuisances, sec. 419; High on Injunctions (3d ed.), sec. 23. To sustain the appellants' contention would be to disallow the remedy of injunction in cases where a nuisance had not already been set up, but is merely threatened. While it is true that an injunction will not issue to allay mere fears and apprehension, nevertheless, if it be shown that there is reasonable and just ground to apprehend the establishment of a nuisance, threatened by a defendant and which he has power to commit, and it is reasonably certain that the health and comfort of those complaining will be impaired by the threatened act, the writ will go out. No remedy in an action at law would be adequate in such a case. To hold that such a nuisance as the court below found would follow from what the appellants proposed to do could not be prevented in advance of its actual existence, would be but little better than a mockery of justice to those to be affected by it: Wahle v. Reinbach, 76 Ill. 322. "The reasons for preventing a prospective mischief are at least as cogent as those for abating a present one. In the latter instance the courts act more readily because they are sure of their

ground.  The evil is visible.  But the call for protection against an apprehended injury, reasonably certain to befall, is as imperative as that for relief from one now felt. Nor is the complainant required to wait until some harm has been experienced or to show with absolute certainty it will occur.  One requirement would make the remedy largely useless and the other impracticable: Miley v. A'Hearn (Ky.), 18 S. W. Repr. 529.  While perhaps proof that it is inevitable or will necessarily ensue may be properly demanded, when nothing more than discomfort is anticipated, when danger to health or life is threatened, a reasonable certainty is enough: Wood on Nuisances, sec. 100.  A party does not have to stand by until his family have sickened or died:" Holke v. Herman, 87 Mo. App. 125.

The assignments of error are overruled and the decree is affirmed at appellants' costs.