[No. 22268. Department One. April 11, 1930.]

THOMAS F. TURTLE *et al., Respondents,* v. LUTHER W. FITCHETT *et al., Appellants.*[1]

[1]Reported in 287 Pac. 7.

*Geo. H. Crandell,* for appellants.

*Vanderveer, Bassett & Levinson,* for respondents.

BEALS, J.—Lake Burien is a small body of fresh water, about forty acres in extent, situated in the midst of a rather thickly settled community a few miles south of the business section of the city of Seattle. The lake is fed probably exclusively by the drainage of surface waters from the surrounding lands and has one small outlet which is dry during the summer months and through which, at the time of the trial of this action, according to the owner of the property through which the outlet passes, no water had run from the lake for more than a year. The entire lake frontage, including the shore lands, is privately owned, there being not even one public road leading to the water. A considerable portion of the waterfront property has been improved with comfortable homes, and no part of the waterfront has ever been used for other than residential purposes.

Defendants, being the owners of a three-acre tract having a frontage of approximately two hundred feet on the south side of the lake, cleared the same so as to provide parking space for two or three hundred automobiles, installed over forty tables for use by picnic parties, together with facilities for cooking, and constructed a boathouse, bathhouse and diving platform, preparatory to opening an amusement resort upon their property, it being their intention to install, in addition, the usual playground equipment such as slides, swings, etc.

Plaintiffs, together with interveners, being the owners of property bordering on the lake, prayed the su-

perior court that defendants be enjoined from proceeding with their plan to open an amusement resort upon their property. At the close of the trial, the court signed a decree enjoining defendants from opening or conducting upon their property any resort such as they desired to operate, from which decree defendants appeal.

Appellants contend that the court erred in enjoining them from devoting their property to the proposed use.

There are no building or other restrictions limiting the use of the property surrounding the lake, and appellants contend that the decree of the trial court finds no sufficient support in the evidence.

The statutes of this state define "nuisance" as follows:

"Whatever is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property so as to essentially interfere with the comfortable enjoyment of the life and property, is a nuisance, and the subject of an action for damages and other and further relief." Rem. Comp. Stat., § 943.

"Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage, any lake or navigable river, bay, stream, canal, or basin, or any public park, square, street or highway; or in any way renders other persons insecure in life, or in the use of property." Rem. Comp. Stat., § 9914.

This court has, under the authority of these sections, enjoined enterprises which it was held would necessarily result either in some physical encroachment upon property or which would interfere with the comfortable enjoyment thereof. *Densmore v. Evergreen Camp No. 147, W. O. W.*, 61 Wash. 230, 112 Pac. 255, Ann. Cas. 1912B 1206, 31 L. R. A. (N. S.) 608;

*Everett v. Paschall,* 61 Wash. 47, 111 Pac. 879, Ann. Cas. 1912B 1128, 31 L. R. A. (N. S.) 827; *Ferry v. Seattle,* 116 Wash. 648, 200 Pac. 336; 203 Pac. 40.

Appellants testified, undoubtedly in the best of good faith, that it was their desire to conduct the amusement resort which they proposed to establish upon their property in a thoroughly orderly and respectable manner. They stated that they did not intend to install a dancing pavilion, and that they would prohibit the drinking of any intoxicating liquor upon their premises. Neither did they plan to install a merry-go-round, or similar noisy amusement; and they testified that it was their present intention to close the resort at nine o'clock every evening. Appellants admitted that they had had no previous experience in operating such an amusement park as they proposed to conduct, and it seems to us that their inexperience in such matters appears quite decisively from their testimony. We are not, however, at all concerned with the question of whether or not a resort conducted according to the plans outlined by appellants could or could not be a financial success, but consider only the legal rights of the respective parties.

It must be granted, as contended by appellants, that the ordinary noise resulting from the attendance of people at a picnic or recreation ground, conducting themselves in an orderly manner, during the daytime and early evening, would not constitute a nuisance. It is also to be assumed that a lawful enterprise will be conducted in an orderly manner. At the same time, this court cannot close its eyes to matters of common knowledge, and it is, of course, true that with the very best intentions in the world the manager of a recreation ground situated upon a body of water and in connection with which boats are rented and bathing encouraged, as part of the amusements intended to at-

tract the visiting public, cannot control the acts of his patrons who rent his boats and row upon the lake, nor of those who bathe therein and swim here and there in its waters.

Picnickers and persons using the grounds only can be more readily controlled and kept within physical and moral bounds, but those who depart therefrom and pursue pleasure upon or within the water are, to a considerable extent, free to follow their own devices and inclinations, notwithstanding any rules which may be promulgated by the management of the recreation park; and courts can scarcely refrain from taking judicial notice that some of the persons who are so aquatically inclined would from time to time take undue liberties with or upon the properties of persons living along the lake shore, which would very seriously interfere with the rights of privacy and property enjoyed by such owners. This is, of course, only one element which is to be considered and it is not one of controlling importance. It has, however, weight in determining the questions here presented.

It seems to be admitted, even by appellants, that the establishment of such a resort as they seek to conduct would have the effect of depreciating the value of the other properties bordering on the lake. Several of respondents' witnesses estimated such depreciation as high as twenty-five per cent of the value. Some of them testified that appellants had admitted that such depreciation would amount to ten per cent. This is also an element to be considered, although it should not be given undue importance as oftentimes such damage is necessarily held to be *damnum absque injuria.* From the testimony before us on the question of depreciation in value, we must hold that by the establishment of the recreation park respondents' lands would be materially reduced in value.

Doctor C. L. Dixon, the health officer of King county, called as a witness on behalf of respondents, testified that in his opinion Lake Burien is too small a body of water to be safely used as a public bathing resort. The witness testified concerning his official experience with bathing resorts located upon another body of water approximately similar in size to Lake Burien, which resorts the health officer had ordered closed; it having seemed probable that a number of cases of infantile paralysis were traceable to infection resulting from bathing in the lake upon the shores of which the resorts were located. While the danger of such or other infection may be remote, it is none the less real, and it is evident that if such a resort as appellants desire to conduct is to be a financial success it must be patronized by many thousands of persons during the season of the year when people seek such recreation. The proposition that° Lake Burien, due to its comparatively small size and lack of drainage, is too small a body of water to be used for public bathing by such a large number of people seems reasonable.

Doctor Dixon apparently based his testimony both upon his actual professional experience as a health officer and as a physician and upon his theoretical knowledge. We are strongly impressed, as was the trial court, by this testimony. Lake Burien is a small body of water, and it seems clear that, during the summer season, when outdoor bathing is popular, the lake has no outlet, nor, unless its waters are replenished from hidden springs, which may be the case to some extent, although from the testimony this appears doubtful, is the water changed or purified by any natural means.

Appellants vigorously contend that the interests of the public are to be considered; that such a bathing

resort is advantageous to persons living in the neighborhood and others who may enjoy the privilege of riding to the country in motor vehicles. This is, of course, an element to be taken into consideration, but it would have, in this instance, much more weight were it not for the fact that within a short distance from the lake lie the waters of Puget Sound, in which any number of people may bathe with as complete safety from infection or contamination as such bathing may be enjoyed anywhere on the face of the earth.

The testimony of the county health officer that an epidemic of dangerous disease might result from the maintenance of a bathing beach in such a small body of water as Lake Burien, and that, within his personal experience, such an epidemic had resulted from the maintenance of such a resort, must receive from any court most careful consideration, and cannot but be accorded great weight in determining such issues as are here presented.

Appellants seek to minimize the testimony introduced on this branch of the case and contend that it is not necessary to anticipate possible action on the part of the county health authorities in controlling a situation with which they are vested by law with full authority to deal. It is true that the authorities in charge of the public health could close, if they thought necessary, such a bathing resort as appellants expect to open, and that they could establish rules and regulations for the control of such an establishment. We do not intend to hold that such an opinion by the county health officer as was expressed in this case by Doctor Dixon is controlling upon the courts in view of the authority vested in the county authorities to control and regulate such resorts, but we do not hesitate to hold that such testimony carries great weight

and, when uncontradicted, as is the case here, should not lightly be disregarded.

This court, in the case of *Densmore v. Evergreen Camp No. 147, W. O. W.*, 61 Wash. 230, 112 Pac. 255, Ann. Cas. 1912B 1206, 31 L. R. A. (N. S.) 608, enjoined the opening of an undertaking establishment in a residence district, although admittedly such an establishment was not a nuisance *per se*. There was a conflict in the evidence as to whether or not the maintenance of such an establishment would bring into the neighborhood any danger of infection or contagion, but the decree of the trial court in favor of the plaintiffs was affirmed, this court holding that the fact that reasonable men of fair minds differed upon the questions at issue warranted this court in holding with the trial court that the injunction should issue.

In the case of *Everett v. Paschall, supra*, this court, in enjoining the use of a building in a residence district as a sanitarium for the treatment of persons suffering with tuberculosis, said:

"Comfortable enjoyment means mental quiet as well as physical comfort;"

this court holding that the maintenance of the sanitarium should be enjoined.

In the case of *Edmunds v. Duff*, 280 Pa. St. 355, 124 Atl. 489, 33 A. L. R. 719, the supreme court of Pennsylvania, in a well considered opinion, enjoined the opening of a proposed amusement park, it appearing that the reasonable enjoyment of the plaintiffs' homes was threatened by the noises and other matters which would necessarily follow from the gathering of large crowds of people, which in a residence neighborhood tended to make the same a less desirable place in which to live. It was there, as here, contended that an amusement park not yet in existence should not be

enjoined, not being a nuisance *per se* and the injury to the plaintiffs being merely prospective. Concerning this point, the court said:

"It is also argued that the injury was prospective only, and that as no immediate injury to plaintiffs was shown, an injunction should not be granted merely to allay fears and apprehensions of plaintiffs concerning something which might or might not happen in the future. Although true an injunction will not be granted where the injury is based merely on apprehension as to future damages, yet, if it be shown reasonable grounds exist to believe the proposed construction will result in a nuisance, and it is reasonably certain the health or comfort of complainants will be harmed by the threatened act, the court will decree immediately to restrain such acts. *Eckels v. Weibley,* 232 Pa. 547, 81 Atl. 645, 7 A. L. R. 739. The testimony in this case establishes to the satisfaction of the court that the park which defendants proposed to construct and operate would necessarily result in a nuisance to the residents of the surrounding neighborhood. This being so, it is a proper case for an injunction without waiting until the amusement place is in actual operation."

To the same effect is the opinion of the court of appeals of Maryland in the case of *Hamilton Corporation v. Julian,* 130 Md. 597, 101 Atl. 558, in which the court said:

"While it is true that bowling alleys and moving picture theaters kept and conducted for profit are not nuisances *per se,* yet they may be and may become so in certain places when they create a disturbance to the serious annoyance and physical discomfort to persons of ordinary sensibilities living in the neighborhood. [Citing cases.] In *Miley v. A'Hearn,* 13 Ky. Law 834, 18 S. W. 529, the court held that in similar cases a party is not required to wait until the injury is inflicted. The object of the writ is preventive and it wards off the injury. The case must be a clear one, but if the danger be probable and threatening and

likely to ensue, the aid of the court may be invoked. [Citing cases.] The real question in all such cases, as stated by the authorities, is whether the nuisance complained of will or does produce such a condition of things as in the judgment of reasonable men is naturally productive of actual physical discomfort to persons of ordinary sensibilities and of ordinary tastes and habits, and as, in view of the circumstances of the case is unreasonable and in derogation of the rights of the party. A prospective or threatening nuisance is subject to the same test and against which a party would have a clear right to preventive relief in equity.''

This rule is also supported by the following authority: *Eckels vs. Weibley*, 232 Pa. St. 547, 81 Atl. 645, 7 A. L. R. 739 (notes at p. 749).

Many necessary businesses, such as hospitals, sanitariums and undertaking establishments, as well as other lawful businesses such as bowling alleys, dance halls, moving-picture theaters and amusement resorts, are not nuisances *per se,* but may become so when the conduct thereof is contemplated within an exclusively residential district. *Everett v. Paschall; Densmore v. Evergreen Camp No. 147, W. O. W., supra; Goodrich v. Starrett,* 108 Wash. 437, 184 Pac. 220; *Ferry v. Seattle,* 116 Wash. 648, 200 Pac. 336, 203 Pac. 40; *Hamilton Corporation v. Julian, supra; Mason v. Deitering,* 132 Mo. App. 26, 111 S. W. 862; *Eckels v. Weibley, supra; Andrews v. Perry,* 127 Misc. Rep. 320, 216 N. Y. Supp. 537; *Deevers v. Lando,* 220 Mo. App. 50, 285 S. W. 746; *Phelps v. Winch,* 309 Ill. 158, 140 N. E. 847, 28 A. L. R. 1169; *Gilbough v. West Side Amusement Co.,* 64 N. J. Eq. 27, 53 Atl. 289.

▮ Appellants contend that the decree signed by the trial court is in any event more extensive in its scope than the exigencies of the occasion require. It is true that it is the law, as contended by appellants,

that the right to abate a nuisance is no greater than the necessity of the individual case. *Grant v. Rosenburg,* 112 Wash. 361, 192 Pac. 889, 196 Pac. 626. Agreeing, as we do, with the trial court, that the evidence shows a state of facts which entitles respondents to relief, we are of the opinion that the decree entered goes no further than it should and that no reason appears for modifying the same or restricting the operation thereof.

Decree affirmed.

MITCHELL, C. J., MILLARD, and PARKER, JJ., concur.

TOLMAN, J. (dissenting)—While I realize that a recreation park, such as appellants desire to establish, would be annoying in many respects to residents in the vicinity, would undoubtedly tend to depreciate in value adjacent property and might in some minor degree be said to interfere with the comfortable enjoyment of such adjacent property, yet I am not convinced that such interference would be of that essential nature which the statute contemplates. I fear the majority has added together a number of things, no one of which is sufficient, and has thus created a total which it holds to be sufficient to invoke the extraordinary remedy of injunction.

As to the use of the lake for boating and bathing, surely property owners may not complain, because, as I understand the record, the lake is a navigable one and is therefore a public highway, the public is free to use it as such and if any member of the public improperly uses it, the law provides a remedy.

Admittedly the operation of an amusement park will have a tendency to affect unfavorably the value of the adjacent property, but if the park be conducted in an orderly and lawful manner, such damage flowing therefrom is as the majority recognizes, *damnum absque injuria.*

Likewise, upon the question of the public health, it seems to be admitted that, under the law, as it now stands, the officers charged with protecting the public health have ample power to regulate or, if necessary, terminate the use of the lake for bathing purposes. That being so, the public officers should be left to perform their duty according to law, and the mere fear or anticipation that their duty will not be performed is not, in my opinion, sufficient to warrant a court of equity in interfering.

Much stress has been placed upon the peculiar wording of our statute defining nuisances, and in my opinion we have heretofore gone fully as far as the statute warrants. It must not be forgotten that the statute uses the words, ''so as to essentially interfere with the comfortable enjoyment of the life and property.'' My understanding of the meaning of the word ''essential'' is ''substantial, indispensable, fundamental, elementary or vital,'' and presumably the legislature used the term in the sense that I have indicated. It seems to me therefore that the majority opinion, if it prevails, will extend the meaning of the statute and open the way to the applying of injunctive relief in those cases where apprehension alone exists and where there is no reasonable certainty that health or essential comfort are threatened.

In this particular case, the only possible ground for injunction would be an actual menace to the public health, and where the law is ample and there are duly constituted public officers charged with the duty of enforcing it, there can be no reasonable apprehension of actual harm.

Therefore, in my opinion, the judgment should be reversed.