## Price et al. *v.* Philip Carey Manufacturing Company, Appellant.

Argued January 17, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Theodore Lane Bean,* for appellant.

*Charles Townley Larzelere,* with him *Franklin L. Wright* and *Frederico Franco Mauck,* for appellees.

Opinion by Mr. Justice Schaffer, March 27, 1933:

In this proceeding plaintiffs seek relief from the operation of defendant's plant to the end that soot, coal dust, cinders, smoke, dust or other waste matter emanating from its stack shall not be thrown upon their premises. In its final decree, the court ordered the defendant to install within ninety days a reasonable and tried dust collecting device; failing such installation within the specified time, the decree provided for the issuing of an injunction restraining defendant from operating its power plant. From this decree defendant appeals.

We have had occasion in a recent case, Elliott Nursery Co. v. Duquesne Light Co., 281 Pa. 166, to review the decisions and state the controlling principles where it is claimed that a nuisance was created by the use of bituminous coal. No useful purpose would be served by setting them forth again. We shall deal here with the facts shown by the record, having in mind the principles which that case and the ones cited in it announce. They justify the decree entered by the chancellor. Particularly is this so in view of what was stated to us at bar during the oral argument by counsel for appellees.

Our reading of the record satisfies us that the court below was justified in its finding that "Plymouth Meeting, where most of the plaintiffs reside, has been a residential community for generations" and "The larger or more extended neighborhood that can be affected by dust and smoke from the defendant's plant, and which, for the purposes of this case, we define as including all territory within the radius of one and one-half miles from the defendant's stack, is preponderately residential in character." The court found that the homes of the plaintiffs are located at distances varying from a fourth of a mile to a mile from defendant's establishment. Within the lesser distance there is another small manufacturing concern and two railroads. The wider area reaches to the Schuylkill River, in the valley of which are larger industries.

Defendant's plant has been operated in its present location for many years and, until the spring of 1929, without complaint. At that time it changed its power plant from one in which the boilers were hand fired, with ordinary bituminous coal used, to one in which pulverized coal is burned under forced draft. This new power plant cost defendant about $450,000. Following installation and the commencement of operation of this new power plant, which consumes on an average about 70 tons of coal a day, the plaintiffs were subjected to the conditions about which they complain and which summarized are these: A black, gritty substance began to fall upon their properties, permeated their houses, ruined flowers, caused lawns to become black, contaminated clothing, smearing and smudging it, dirtied rugs and upholstery, gathered on window sills and other outside portions of houses in noticeable and appreciable quantities, smearing when it rained. These conditions depreciated the value of plaintiffs' properties. It was shown that the quantity of waste material which emanated from defendant's stack and largely settled over the adjacent properties amounted to as much as three and a half tons per day, more than one hundred tons a month. While not so great in quantity, the emanations of refuse from defendant's stack give this case somewhat the cast of Sullivan v. Jones & Laughlin Steel Co., 208 Pa. 540.

Plaintiffs do not demand that defendant cease operation of its plant, in which many men are employed; all they ask is to be safeguarded against the nuisance which now affects them, to the extent that appliances, which defendant can acquire at a reasonable cost, will reduce the amount of the refuse deposited upon their properties. At our bar, their counsel stated that if the defendant would install an appliance in use in other plants to prevent the escape of a large part of the refuse from the using of powdered coal, plaintiffs would be satisfied and would not ask for further relief. This appliance can be acquired at an expense of about $10,000. We think it

reasonable and equitable to require defendant to make such an expenditure and put in such an appliance and thus, as far as this will accomplish the result, diminish the annoyances suffered. Appellant should be afforded the necessary time to do this.

It is ordered that the decree of the court below be modified and that the time limit fixed therein for the installation in defendant's plant of a dust collecting device at a cost of approximately $10,000 be extended for a further period of ninety days from the entry of the amended decree. It is further ordered that defendant pay the costs.