## Kelly et al. v. Philadelphia et al.

*John Edward Sheridan, J. P. Gilliland* and *Walter Biddle Saul,* for plaintiffs.

*Abraham L. Freedman,* city solicitor, and *James L. Stern,* assistant city solicitor, for defendants.

LEWIS, P. J., and CARROLL, J., August 21, 1953.— Plaintiffs, John B. Kelly and Queen Lane Park, Inc., bring these two actions in equity to restrain the City of Philadelphia and its officials from enforcing an ordinance approved March 13, 1953, whereby the zoning classification of an area of land in the vicinity of Fox Street and Abbottsford Road was changed from "B" and "C" residential to "least restricted" so that the

city might construct an incinerator on this site. Because of the similarity of the factual and legal issues presented and the common questions involved the two suits were consolidated and the preliminary objections of the city to both complaints are disposed of in this opinion.

The material allegations of the complaints set forth the following facts: On June 26, 1952, an ordinance was introduced in city council purporting to change the zoning classification of one lot within an area previously zoned "B" and "C" residential to "least restricted"; protests to this ordinance were filed on July 17, 1952, by more than 20 percent of the owners of the area immediately adjacent to this land, thereby making it necessary that the bill to change the classification be approved by a vote of three fourths of the members of council: Act of May 6, 1929, P. L. 1551, sec. 5, 53 PS §3822. After these protests were lodged by the neighboring residents, council amended the bill on February 26, 1953, by subdividing the lot, and so rezoning it that two 100-foot wide strips of land immediately adjacent to the land owned by the protestants would be eliminated from the area contemplated for use as an incinerator site. By so doing council thereby circumvented the provision of the act which requires three fourths of the members of council to approve the change when 20 percent of the owners of the immediately adjacent land protest. The bill thus amended was passed by a simple majority and not by three fourths of the members of council, and such action was taken without advertising or public hearing of the amended bill.

Plaintiffs allege that no real subdivision was achieved; that the small strips are still portions of the lot and that the protestants remain owners of more than 20 percent of the area immediately adjacent to and adjoining the site of the proposed incinerator,

thereby rendering passage of the act by less than three fourths of council ineffective. They also contend that the failure to advertise or hold public hearing on the amended ordinance, which they claim is substantially different from the original, is a violation of the procedures mandated by the Home Rule Charter of April 17, 1951, as well as the procedures provided by the Act of 1929.

Plaintiffs further argue that the change in classification is arbitrary, capricious and unreasonable, and that the attempted subdivision, even if successful, will render these strips completely valueless and a waste of municipal property. They conclude that as owners of the land in the immediate vicinity they will suffer irreparable injury by virtue of the erection of an incinerator because the operation of the 600-ton incinerator will cause pollution of the area from the exudation of soot, smoke and ash, and will result in a great increase in vehicular traffic in the neighborhood, all of which will be detrimental to the health and safety of the residents of the adjoining properties.

The city filed preliminary objections, the basis of which are twofold: First, the court is without jurisdiction to hear the matter in equity for the reason that there is an exclusive statutory legal remedy provided by the Act of May 6, 1929, P. L. 1551, which plaintiffs have failed to exercise; and second, quite apart from the jurisdictional question, there is no substance or merit to plaintiffs' complaints, since council legally enacted the ordinance in accord with the procedural requirements of the Home Rule Charter.

Thus, the two questions raised are, first, whether equity has jurisdition and, second, if there is a basis for jurisdiction, whether the substantive averments are sufficient to invoke the power of the court to restrain the city. We are asked to decide the matter solely on the pleadings, and in so doing it is axiomatic

that plaintiffs' material allegations must be taken as true, and for this purpose the substantive averments of the complaints are admitted.

The city contends that the complete and exclusive statutory remedy furnished by section 8 of the Act of 1929, specifically preserved by the Home Rule Charter, is controlling, and that as protestants did not seek a hearing before the zoning board of adjustment they cannot come into this court. For this proposition the city solicitor cites the cases of Hollearn et al. v. Silverman et al., 338 Pa. 346 (1940) ; Wojnar et ux. v. Yale and Towne Manufacturing Company, Inc., et al., 348 Pa. 595 (1944) ; Wyszynski v. Philadelphia, 370 Pa. 632 (1952).

While we agree that the policy developed in the appellate cases provides for exhaustion of administrative remedies before resort to judicial relief, we do not agree with the city that in this case equity has no basis for jurisdiction. As the court said in Hollearn v. Silverman, supra:

"Generally, equity will not take jurisdiction to enjoin the enforcement of an ordinance *merely* because it might be condemned as void; *other circumstances* bringing the case under *some acknowledged head of equity jurisdiction must be shown.*" (Italics supplied.)

Without laboring the distinctions that differentiate the instant controversy from the cases cited by the city, it suffices to say that the controlling factors in those cases were that at the time equitable aid was sought the matters were either before, on appeal from, or must of necessity have come before the zoning board. Further, with the exception of the Wyszynski v. Philadelphia case, supra, there had been a full hearing on the merits by the lower court in those cases and the Supreme Court determination was made on the basis of full evidence and proofs adduced at the hearing.

It is one thing, as in Gratton et al. v. Conte et al.,

364 Pa. 578, the Hollearn case, supra, and the Wojnar case, supra, for an appellate court to say that on the basis of testimony presented to the chancellor the city should not be enjoined, and quite another for the city to cite these cases for the proposition that before the merits of the case can be weighed this court is utterly lacking in authority to consider plaintiffs' complaints.

While it is true that allegations of illegality and unconstitutionality with nothing more are not a basis for equitable jurisdiction, where the allegations as in this case establish prima facie that a condition injurious to the health and welfare of neighboring landowners will result, we are of opinion that the factor of nuisance giving us jurisdiction is clearly present. In this case plaintiffs allege "the operation of a 600-ton incinerator will cause pollution of the area as a result of soot, smoke, fly ash . . .". While the testimony to be adduced at the hearing may not establish this allegation, we cannot say now as a matter of law that such averment is capricious. To the contrary, the complaints allege a public and private nuisance entitling plaintiffs to equitable relief. That equity has jurisdiction to restrain a nuisance in a residential neighborhood that will deleteriously affect the health and welfare of those dwelling in the area cannot be controverted. See Essick et al. v. Shillam et al. and cases there cited, 347 Pa. 373 (1943) ; also, Pennsylvania Co., etc., et al. v. Sun Co. and cases there cited, 290 Pa. 404 (1927). This principle which is firmly imbedded in Pennsylvania law has been reaffirmed recently in Lees v. Sampson Land Company, 372 Pa. 126 (1952), where an action in equity was brought to restrain the erection of a sewage disposal plant for the use of Penn Township. Even though no nuisance was found to exist, the court stated :

"Of course, it is scarcely necessary to add that if the Township operates the plant in such a manner that it

becomes a nuisance in fact, the courts of equity are open not only to the plaintiffs for such remedy as the conditions demand but they are available to anyone else who may suffer harm because of such a nuisance."

The additional fact that the proposed action is taken under the authority of a municipal zoning ordinance cannot subvert equitable jurisdiction. We agree with the holding of the Common Pleas Court of Montgomery County in the case of Herr et al. v. Bonair Foundry Company et al., 57 Montg. 410 (1941), where in dismissing preliminary objections to a complaint in equity the court rejected contentions similar to those presented by the city in this case. The court held:

"Whether all plaintiffs residing in the adjoining residential districts, by reason of their proximity, are adversely and substantially affected in the use and enjoyment of their properties and in health by the operation of the iron foundry is an issue on the merits, which properly cannot be decided preliminarily.

"We think the cases of Perrin's Appeal, 305 Pa. 42, 51, (1931); Price v. Philip Carey Mfg. Co., 310 Pa. 557 (1933); and White v. Country Club, 322 Pa. 147, 153 (1936), are a complete answer to the remaining three objections. 'Acts of municipal officers under zoning legislation permitting the use of property for what is or may be a nuisance, do not oust the jurisdiction of equity to determine whether a nuisance in fact exists and should be restrained.' 'If in the future it is operated in an unreasonable and objectionable manner, and becomes the source of offensive and obnoxious features not ordinarily incidental to the conduct of such stations, thereby creating a nuisance in fact, appellee will be given full and adequate relief.' The allegations in the bill sufficiently allege special and unusual damage and injury, and equity has jurisdiction."

It is also clear that when the proposed use will adversely affect surrounding property owners by reduc-

ing the market value of the properties and by endangering the health of the residents, the court has jurisdiction of the matter before the threatened harm actually occurs: Eckles v. Weibley, 232 Pa. 547, 550.

What was said by the late Chief Justice Maxey in Heinl et al. v. Pecher et al., 330 Pa. 232 (1938), we think is controlling here:

"Appellants also contend that 'the only possible injury attempted to be shown by the plaintiffs was possible depreciation of value of real estate in the community.' We do not so interpret this record. One of the court's conclusions was that the maintenance and operation of the incinerator would be a nuisance and in its discussion the court said: 'A public incinerator in such a locality would then, in all probability, be declared a nuisance regardless of any zoning ordinance.' In the very case cited by appellants, to wit: Penna. Co., etc., v. Sun Co., 290 Pa. 404, 138 A. 909, this court said: 'Equitable relief must be predicated on an injurious invasion of a fixed and determined property right. By injury is meant something affecting the capacity of the property for ordinary use or *causing a discomfort in the enjoyment of it that threatens the health or welfare of the occupant,* with resultant injury to the property. . . . A mere diminution in value is not sufficient to justify a grant of equitable relief.' Nothing can be clearer than that the original plaintiffs, who live adjacent to this incinerator plant, would by the operation of that plant suffer 'a discomfort in the enjoyment' of their property, which would threaten their health and welfare."

Accordingly, the preliminary objections of defendant are dismissed.