[No. 22524.   Department One.   April 2, 1931.]

THE STATE OF WASHINGTON, *on the Relation of Modern Lumber & Millwork Company, Appellant,* v. I. G. MacDUFF, *Respondent.*[1]

[1]Reported in 297 Pac. 733.

*Hayden, Langhorne & Metzger,* for appellant.

*E. K. Murray, Leo Teats,* and *Bartlett Rummel,* for respondent.

MILLARD, J.—Lots 1 to 12, inclusive, of block 11 of Alliance Addition, owned by the Modern Lumber & Millwork Company, comprise the half block on the east side of Cushman avenue and extend between south Eleventh and south Twelfth streets in the city of Tacoma. For approximately sixteen years, the lumber company and its immediate predecessor in interest have occupied all of the twelve lots and conducted thereon a store for the sale at retail of lumber, plaster board, roofing paper, paints, hardware, and other building supplies. The southerly half (lots 7 to 12, inclusive) of the property was devoted to the open storage of lumber, with two small buildings (originally dry kilns) also used for storage. The northerly half (lots 1 to 6, inclusive) of the property was improved with various buildings used as office and sales room, warehouse and factory. In the factory building was installed machinery used in manufacturing sash and doors and finished cabinet work. Such use by the lumber company of its premises antedated any form of zoning ordinance of the city of Tacoma.

Ordinance No. 8136, known as the "Building Code," was passed by the city council April 9, 1924. It provides for the structural requirements of buildings proposed to be erected, and that no building may be constructed without a building permit. The ordinance imposes on the building inspector the duty to receive applications for and to issue such permits. Section eighteen of the ordinance establishes as a residence

district all of the city except such portions as are within fire districts thereby or thereafter established, and except such portions as may have been theretofore or may be thereafter otherwise excepted. Paragraph two of section eighteen reads as follows:

"It shall be unlawful for any person, firm or corporation to erect, establish, maintain, carry on or operate within any residential district herein defined, any business enterprise except as provided in paragraph 4 of this section."

By the provisions of paragraph three, it is made unlawful to establish, maintain or operate certain businesses, which from their nature are recognized as being nuisances per se, except in a prescribed limited area. Paragraph four provides that

"This ordinance is not intended to prohibit the operation of any business, except those mentioned in paragraph 3, which is now being operated, or to prohibit the establishment and operation of any business, except those mentioned in said paragraph 3, in any residential section when the person desiring to establish the same shall have, within sixty days prior thereto, obtained the consent in writing of owners representing at least three-fourths of the property within a radius of 300 feet of a central point of the structure to be erected as designated on plans that must be filed with the Building Inspector at the time of filing petition. And no permit for the erection or alteration of any building to be used for the purpose of conducting any of said businesses therein shall be issued until such consent shall have been so filed."

The city adopted a general zoning plan by the passage on April 6, 1927, of ordinance No. 9147. That ordinance created in the city of Tacoma two manufacturing districts, thirteen retail districts, and the remainder of the city was designated as a residential district. Retail district No. 13, established by that ordinance, includes the one-half block on either side of south Eleventh

street from "K" street to Sprague street and embraces the north six lots (lots 7 to 12, inclusive) of the lumber company's property; that portion on which were located the office, sales room, warehouse and woodworking factory. The lumber company's lots 1 to 6, inclusive, lie in the residential district. That is, while the lumber company's property constitutes a single solid tract of twelve lots, and was used as a whole in the business, the property was by the zoning ordinance cut in two, and one-half placed in a residential district and the other half placed in a retail district.

The uses to which real property within the retail districts may be put, as defined by section 18 of the zoning ordinance, are:

"1. Any use permitted in the residential district. 2. Store, wholesale or retail. 3. Office, business or professional. 4. Bank. 5. Restaurant. 6. Service station. 7. Printing establishment. 8. Telephone exchange or telegraph office. 9. Theater, dance hall, skating rink, or other commercial amusement place if not located within 500 feet of the property line of any park, school or playground. 10. Retail trade or shop for custom work or the making of articles to be sold at retail on the premises. 11. Public garages. 12. Public repair shops. 13. Hand laundry, clothes cleaning and pressing. 14. Manufacturing clearly incidental to a retail business lawfully conducted on the premises. The use of the real property within said Retail Districts for any purpose other than the above is hereby prohibited."

Section 20 of the zoning ordinance provides:

"The lawful use of a building or premises existing at the time of the adoption of this ordinance but not conforming to the provisions for the use district within which it is located may continue, provided that no structural alterations are made except such as the Building Inspector shall deem necessary for the safety of the building.

"Any building remaining vacant for a continuous period of more than one year shall not again be reoccupied except by a conforming use.

"A non-conforming use shall not be changed except for a conforming use.

"The non-conforming use of a fractional part of a building or lot shall not be extended to occupy a greater part of the building or lot than that occupied at the time this ordinance became effective, except that a non-conforming use may be extended to that portion of the building which was arranged or designed for such non-conforming use at the time of the passage of this ordinance."

On January 16, 1930, the buildings on the north six lots, which are in the retail district, were destroyed by fire. On January 30, 1930, the lumber company applied to the city building inspector for a permit to construct a building on the said six lots, to be used as a retail store for the sale at retail of lumber, paints, oils, hardware, plaster board, roofing paper, and other building materials and supplies, and as a warehouse for the storage of the stock in trade, including lumber. That is, the lumber company applied for a permit to construct a building wholly in a retail district to enable it to continue in the use theretofore made of the premises, but eliminated therefrom all woodworking or other machinery. The building inspector refused to issue the permit, informing the applicant that no building permit would be issued by his office for the erection of a building to be used for the storage of lumber, as detailed in the plans submitted.

The lumber company brought an action against the building inspector, and obtained the issuance of an alternative writ of mandate, returnable February 6, 1930. On February 3, 1930, three days prior to the return day, the city council passed ordinance No. 10382, amending § 18 of the zoning ordinance No. 9147 to

read as follows, the italicized portion being the added proviso:

"10. Retail trade or shop for custom work or the making of articles to be sold at retail on the premises; *provided this shall not be construed as including retail lumber yards and wood yards.*"

Upon his return to the alternative writ, the building inspector justified his refusal of a permit upon the ground that there was not a proper application therefor, and that said amendatory ordinance No. 10382 prohibited the building sought to be erected. The trial court concluded that the building inspector's refusal to consider the lumber company's application for a permit, "and the denial of a building permit was arbitrary, capricious, and without any just, valid, or legal reason or excuse therefor, and in violation of the duty enjoined upon him by the ordinance of the city of Tacoma." But the court held that the amendatory ordinance No. 10382 was a valid exercise of the police power of the city; that, as that ordinance prohibited lumber yards in retail districts, the lumber company was not entitled to the permit sought. Judgment was entered dismissing the action. The relator has appealed.

It is contended that the building for which the permit is sought is reasonably necessary for the continuance of appellant's business, and neither it nor the use proposed to be made thereof will constitute a nuisance or be detrimental to the public health, safety, morals, or general welfare of the community; that appellant's business is lawful in itself, and was lawfully instituted, therefore it may continue and rebuild, enlarge or expand despite the ordinances above mentioned.

Respondent insists that the appellant was not entitled to a permit, as the issuance thereof for the build-

ing which the appellant sought to construct would have been in violation of zoning ordinance No. 9147, as amended by ordinance No. 10382. That is to say, while appellant's business was lawful it constituted a nonconforming use which was permitted under the zoning ordinance so long as it did not increase or expand, or require the rebuilding or replacement of any of the structures in which such business was conducted.

"So long as municipal bodies confine their enactments providing for the regulation and control of property privately owned, within the proper limit of their police powers, they do not violate the property rights of the individual. The limit imposed is that the regulations or requirements, whatever they may be, must be reasonable, and not arbitrary, and have for their object the preservation of the public health, safety, morals or general welfare." 43 C. J. 415.

■ That the proposed building and use are not inconsistent with public health, safety, morals, or general welfare clearly appears. The building will house no machinery to produce noise or dust or shavings, and will contain no burner or furnace to emit smoke or cinders. No obnoxious fumes or odors will emanate from the building. The only objection to the proposed structure is that lumber will be stored therein for retail trade. The use to which the building will be put was a lawful use immediately prior to the passage of ordinance No. 9147, the zoning ordinance. That ordinance provided that such use existing at the time of the adoption of the ordinance, while not conforming to the provisions for the use district within which it was located, could continue.

"The lawful use of a building or premises existing at the time of the adoption of this ordinance, but not conforming to the provisions for the use district within which it is located may continue. . . ."

Such non-conforming use, the ordinance provided, could not be changed, however, except for a conforming use. That is, while the non-conforming use could be continued, the ordinance did not authorize one non-conforming use or business to be succeeded by another, following the discontinuance of the former, where such succeeding business could not, subsequent to the enactment of the ordinance, be originally established there; although it might have been lawfully conducted there prior to the enactment of the ordinance.

"A regulation providing that in any building or premises any lawful use existing therein at the time of the passage of the regulation may be continued, although not conforming to the regulations, does not authorize the conducting of another business which might prior to the enactment of the regulation have been lawfully conducted in such building, although it could not, subsequent to the enactment be originally established there." 43 C. J. 358.

By ordinance No. 10382, zoning ordinance No. 9147 was amended to include in the list of non-conforming uses the business in which appellant has been engaged for years, the use to which it would put the building for which it applied for a building permit. That, insists respondent, authorizes the refusal of the permit.

It will be remembered that the building to be erected will be located on the one-half of the appellant's tract of land which is within the retail district. The other half is within the residential district. The entire tract is used for the lumber business. The effect of the enforcement of the amendatory ordinance would be to prevent the continuance of appellant's business on one-half of his property. The restriction imposed does not bear a substantial relation to the public health, safety, morals, or general welfare, and the enforcement of the ordinance would be the taking of property without compensation. In *Liberty Lumber Co. v. Ta-*

*coma,* 142 Wash. 377, 253 Pac. 122, a lumber company had conducted its business in a residential district for a number of years. Subsequent to the enactment of an ordinance prohibiting the establishment and operation of that business within that district, the company purchased two lots adjoining the land on which its business was located, and attempted to erect thereon a lumber shed. The city building inspector ordered the work on the building stopped, whereupon an action was instituted by the lumber company to enjoin the inspector. We held that the city could not by ordinance restrict the use to which the company was putting its property; that the city could not prevent the expansion of an existing business or the extension of an established use to other property acquired after the attempted restriction had become effective and to which the restriction in terms applied.

In *In re Gilfillan's Permit,* 291 Pa. St. 358, 140 Atl. 136, it was held that the city was unauthorized under zoning ordinance to refuse a permit to a retail lumber dealer to erect cement block storage building, where the line separating the residential and business districts ran through the lot on which his business was conducted, the additional construction not being detrimental to public welfare, safety and health. The court said:

"The power of municipalities to enact zoning ordinances has been the subject of considerable discussion in recent years, resulting in conflicting decisions in various jurisdictions, due mainly to the difference in constitutional provisions, under which the several statutes were enacted. The general tendency of the courts has been toward a liberal construction of legislation conferring power to create zoning ordinances, in recognition of the changing needs of municipalities, due to growth and development, and to sustain such ordinances as a proper exercise of police power, where

such can be done without arbitrarily infringing on the rights of individuals. But inasmuch as the natural effect of ordinances of this description is to limit private rights in the interest of the public welfare, the exercise of the power must be carefully guarded and permitted only in cases where the conditions and circumstances are such as to show the effect of the ordinance to be a reasonable and proper exercise of police power. The subject is considered by this court in *Ward's Appeal*, 289 Pa. 458, 137 A. 630, and *Liggett's Appeal*, 271 Pa. St. 109, 139 A. 619, and by the Supreme Court of the United States in *Euclid Avenue v. Ambler Realty Co.*, 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, in which the constitutionality of such ordinances is upheld as a proper exercise of the police power, provided they do not interfere with the use or control of private property, without relation to the public safety, health, morals or general welfare, and also holding that the power to regulate does not extend to an arbitrary, unreasonable, or unnecessary intermeddling with the ownership of private property.

"The findings of the court below expressly negative every condition required to affirmatively appear, before the action of the board refusing a permit can be sustained. Instead of being detrimental to the safety, health, or morals of the community, the findings distinctly demonstrate the building in question to have the opposite effect, tending to promote the public safety, health and morals. Petitioner's business had been established at its present location long before the passing of the zoning ordinance and was actively conducted at the time the ordinance went into effect; accordingly, as the property was then used for lawful purposes, the city was without power to compel a change in the nature of the use, or prevent the owner from making such necessary additions to the existing structure as were needed to provide for its natural expansion and the accommodation of increased trade, so long as such additions would not be detrimental to the public welfare, safety and health. The proposed building is not of a character to change the neighborhood, and, under the circumstances, to refuse a permit

for its erection merely because, in zoning the city, the line separating the residential and business district ran through the lot on which the plant is located would be sanctioning an arbitrary act without resultant benefit to the public welfare, safety and health.

"The ordinance here in controversy, in prescribing the powers and duties of the board of appeals, made provision for conditions such as arose in this case by giving the board power, 'in appropriate cases, . . . [to] authorize a variation of the application of the regulations herein prescribed, and for this purpose may cause a permit to be issued . . . for the enlargement of existing structures, or the erection, on the same lot or plot of ground, of additional structures for trade, business or industry located in a district restricted against its use where such enlargement or expansion of such trade, business or industry will not be detrimental to or tend to alter the character of the neighborhood.'

"The present case is one where the board, under authority conferred upon it by the above provisions of the ordinance, should have allowed an exception to the strict provisions of the ordinance and granted a permit for the additional structures to take care of the expansion of petitioner's business, . . ."

*Durkin Lumber Co. v. Fitzsimmons,* 106 N. J. Law 248, 147 Atl. 555, is very similar to the case at bar. A lumber dealer owned a tract of land lying in two municipalities. The buildings and business office of the lumber business were maintained in one municipality, a district zoned for business. The lumber was piled and stored in the other municipality, in which the district was zoned as residential, such storing and piling of the lumber being an essential part of the business. The piling and storing of the lumber was to that extent the conducting of the business within the latter municipality (the residence district), and such use did not conform to the zoning ordinance prohibiting the same.

The court held that, at the time of the alleged violation of the zoning ordinance, the ordinance, to be within the law, must have been in definite and substantial relationship to the safety, health, morals, or general welfare of the community; and that the instant case did not have that relationship. The opinion reads as follows:

"The lands of the appellant are peculiarly situated. They are, in shape, an oblique quadrangle, bisected on the north and west by the boundary line that separates the towns of Bloomfield and Belleville, and therefore the lands lie partly in each of these municipalities. The Bloomfield portion is zoned for industries; the Belleville portion is zoned as an 'A' residence section. Appellant's office building, from which its lumber business is conducted, is on the Bloomfield side. There are no buildings or structures on the Belleville portion, the only use made of the last mentioned lands being for the piling and storing of lumber, not nearer Belleville Avenue, however, than approximately 180 feet. . . .

"The Belleville ordinance was adopted September 4, 1923, and, not in terms but by excluding all uses except those specifically enumerated, prohibited the use of so much of appellant's lands as lie within the limits of the municipality for the storage of building materials or for the operation of a lumber business. In or about the month of March, 1926, appellant bought the entire tract as a unit, and, without authority from the municipality, proceeded to use the Belleville lands for the piling and storage of lumber incidental to the business conducted from the buildings situated in Bloomfield. We consider, however, that such piling and storage of lumber was essential part of the business, and was, to that extent, the conducting of that business in the affected area. In other words, the use did not conform to the ordinance. It was a non-conforming use. Was the use at its inception therefore unlawful? That depends upon whether or not the ordinance was lawful in its prohibition; and we shall

first consider the law as it was prior to the zoning amendment, and then in the light of that enactment.

"The ordinance was adopted in what the town authorities conceived was a compliance with the provisions of the Municipalities Act, chapter 152, p. 319, P. L. 1917, as amended and supplemented, chapter 240, p. 455, P. L. 1920, and chapter 162, p. 277, P. L. 1922. That legislation and an ordinance passed thereunder were considered by this court in *Ignaciunas v. Nutley,* 99 N. J. L. 389, 125 A. 121, 122. It was therein held (Gummere, C. J.) that 'the legislature in its grant of power to the several municipalities of the state to regulate the use to which a property owner may put his property even to the extent of prohibiting its use for a particular purpose, limited that power by the provisions of the statute that such regulation must "be designed to promote the public health, safety and general welfare." If, therefore, the ordinance, in its application to the property of any particular owner, does not come within the limitation of the statute, to that extent it is without legal justification and void.' The reasoning of the case clearly demonstrated, and the opinion concisely held, that the ordinary use of property is not authorized by the general welfare clause of the statute to be prohibited because repugnant to the sentiments or desires of a particular class residing in the immediate neighborhood thereof, but only because such use is detrimental to the interests of the public at large; that the 'restriction authorized by this provision of the statute upon the untrammeled use of property for the promotion of the general welfare of the community must be such as will tend in some degree to prevent harm to the public generally or to promote the common good of the whole of the people of such community.'

"On this point the main argument presented by respondents in the instant case is that of an alleged fire hazard, and this argument becomes unconvincing when the circumstances of the neighborhood, the arrangements on the appellant's property, and the fact that the ordinance does permit the disputed use in the

business zone, are considered in the light of the opinions in *Ingersoll v. South Orange,* 128 A. 393, 3 N. J. Misc. R. 335, affirmed 102 N. J. Law, 218, 130 A. 721, *Rudensey v. Montclair,* 131 A. 906, 4 N. J. Misc. R. 103, and *Karke Realty Associates v. Jersey City,* 104 N. J. Law, 173, 139 A. 55. . . .'

"As matters stood in March, 1926, it had been clearly enunciated that a prohibitive ordinance, to be within the law, must be in very definite and substantial relationship to the safety, health, morals or general welfare of the community. It seems redundant to repeat the reasoning, the applications, or the illustrations of the cited cases. Sufficient to say that the prohibition in controversy did not have that relationship. We reach the conclusion, therefore, that in March, 1926, when the use began, the ordinance, so far as it prevented the use of appellant's property for the purpose to which the property was actually put, was not authorized by the statute under which it purports to have been adopted, and to that extent was null and void."

The location and operation of lumber yards within the municipal limits may be a subject of municipal regulation. Where, however, the effect of a zoning ordinance is to destroy or prohibit the continuance of an established and otherwise lawful business, the ordinance as applied to the property of the objecting owner will not be upheld, unless the court can see that it will tend to promote the public health, morals, safety or welfare.

"Threatened invasion of a residence district by business may be an impelling reason for affording protection by way of a zoning ordinance, but such an ordinance may not operate to remove business found there. The legitimate purposes of a zoning ordinance, in its restrictive provisions relative to a residence district, is to preserve and not to disrupt existing conditions." *Adams v. Kalamazoo Ice & Fuel Co.,* 245 Mich. 261, 222 N. W. 86.

The judgment is reversed and the cause remanded with directions to grant appellant the relief for which it prays.

TOLMAN, C. J., BEALS, MAIN, and MITCHELL, JJ., concur.