14646

FINCHER v. CITY OF UNION

(196 S. E., 1)

August, 1937.

*Messrs. Barron, Barron & Walker, J. R. Flynn* and *Young & Long,* for appellant,

*Messrs. Hughes & White,* for respondent,

234

March 24, 1938.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

This is an appeal from an order of Hon. T. S. Sease, wherein he held an ordinance of the City of Union to be unconstitutional and unreasonable in that it seeks to interfere with and disturb the legitimate business of the respondent, without just cause and in violation of the due process clauses of the Constitution of the United States, Const. U. S. Amend. 14, and the Constitution of the State of South Carolina, Const. Art. 1, § 5; that, further, the ordinance is unreasonable in that it attempts to hold, through its operation, the respondent responsible for certain incidents of disorderly conduct on his premises by others not connected with his business and over whom he has no control; that it deprived respondent of his property rights in that it discriminates between him and others in a similar line of business.

The ordinance, stripped of the title, the enacting clause, and the penalty, is as follows:

"That for the preservation and promotion of the peace and good health of the citizens of the City of Union it is ordained,

"Section 1. That on and after the passage of this ordinance it shall be unlawful for any person owning, operating or employed at a barbecue stand, located in any residential area of the City of Union, to allow the same to remain open between the hours of 11:00 o'clock P. M., and 6:00 o'clock A. M., except on Saturdays, when they may remain open until 12:00 o'clock midnight. That during the said hours provided for closing it shall be unlawful for any person to sell, offer for sale, trade or give away any food, drink, to-

bacco or other commodity carried as stock in trade by the said Barbecue Stand. That each sale, trade or gift above prohibited shall constitute a separate offense against this ordinance.

"Section 2. That it shall be unlawful for any person to sound an automobile horn, whistle or siren, or to make any other loud and disturbing noise, by either mechanical or human agency, at or around such Barbecue Stand after the hours of 11:00 o'clock P. M., and 6:00 o'clock A. M.

"Definitions: The word 'Person' wherever used herein shall include persons, firms, associations and corporations.

"The word 'Residential Area' used herein shall include any section of the City of Union where two or more houses, used for residential purposes, are located on abutting property.

"The words 'Barbecue Stand' used herein shall include all lunch rooms, sandwich shops, or other eating houses where food and drinks, cigars, cigarettes and candies are sold or offered for sale and usually consumed on or about the premises."

"Done and ratified under the Seal of the City of Union, this 21st day of June, A. D., 1937."

Respondent's place of business is on the west side of North Pinckney street, the lot having a frontage thereon of 92 feet, and in shape is a parallelogram. The building thereon is about in the center of the lot, a few feet back from the street. The southwest corner of respondent's lot is approximately 350 feet from the main business street of the City of Union, this street being designated on the plats in the record as West Main street. North Pinckney street is a part of the State highway from Spartanburg to Columbia.

The building or Bar-B-Q stand is surrounded by driveways on all sides, and with stalls located in the rear of the lot for the purpose of parking automobiles. Between respondent's lot on the west side of said North Pinckney and said West Main street, commencing at the lot, is a residence owned and occupied by one C. J. Purcell, and four of his

sisters, the residence being situate within five feet of respondent's lot, although the Purcell lot has a frontage of 94 feet; Mrs. Greene Sander's Boarding House; an alley about 10 feet wide; and the place of business of Wright Baker Company, occupying the northwest corner of West Main and North Pinckney streets. To the north of respondent's lot and on the west side of North Pinckley street in the order in which they come is the residence of J. Harley Wood and others; residence of Butler Dickenson; and residence of H. R. Reynolds on the southwest corner of North Pinckney and Academy streets. Continuing on the west side of North Pinckney street and north of Academy street, are three residences, another street entering leading into North Pinckney street, and two other residences, and a warehouse. On the east side of North Pinckney street, commencing at West Main street, at the northwest corner of West Main and North Pinckney streets, the place of business of J. Cohen & Company; then an alley; next, Foster Jordon's Warehouse; next Bobo's Boarding House; next, office and residence of Dr. J. G. Going; next, Salvation Army residence and church; next Foster's Garage; and next, Standard Oil Filling Station, which brings us to Academy street, which intersects North Pinckney street. Beginning again north of Academy street, a Gulf filling station on the corner; next, another filling station; and next, Smith's Lumber Yard.

Without regard to the great number of places of business on North Pinckney street, and in the vicinity of respondent's Bar-B-Q stand, under the ordinance, the fact that there is a residence on the adjoining or abutting lot to the north, and a residence on the adjoining or abutting lot to the south, *ipso facto* places the Bar-B-Q stand of respondent in a "residential area" of the city.

The whole matter was tried by Judge Sease on affidavits which consume approximately thirty-two pages of the printed transcript of record; and, after reading all of the pleadings and affidavits submitted, and hearing argument of counsel, Judge Sease found as a fact that the ordinance

was "unreasonable in that it seeks to interfere with and disturb the legitimate business of the plaintiff (respondent), without just cause. * * *" He further found as a fact that "the said ordinance is unreasonable in that it attempts to hold, through its operating, the plaintiff (respondent) responsible for certain incidents of disorderly conduct on his premises by others not connected with his business, and over whom he had and has no control." He further found that respondent had been deprived of his property rights by the said ordinance in that it discriminated between respondent and others in a similar line of business.

There is practically no difference in the "Questions Involved" between appellant and respondent as stated in their respective printed briefs. Nos. 1 and 2 of the "Questions Involved" as stated by appellant, and hereafter set out, will not be discussed separately, since they may well be considered together.

The questions:

"1. Is the ordinance complained of unreasonable, and is it a legitimate exercise of the police power vested in the City of Union?

"2. Is the ordinance unconstitutional as violative of the due process clauses of Article 1, Section 5 of the Constitution of South Carolina and of the Fourteenth Amendment of the Constitution of the United States?"

Section 7233 of the Code of 1932 is as follows: *"Power to Enact Rules or Ordinances for Police Government.*—The city councils and town councils of the cities and towns of the State shall, in addition to the powers conferred by their respective charters, have power and authority to make, ordain and establish all such rules, by-laws, regulations and ordinances respecting the roads, streets, markets, police, health and order of said cities and towns, or respecting any subject as shall appear to them necessary and proper for the security, welfare and convenience of such cities and towns, or for preserving health, peace, order and good government within the same. And the said city or town councils may fix fines

and penalties for the violation thereof, not exceeding one hundred dollars fine or thirty days imprisonment: Provided, That such rules, by-laws and ordinances shall not be inconsistent with the laws of this State: Provided, further, That nothing herein contained shall be construed to repeal the law establishing local boards of health."

It would take a too liberal construction of this ordinance to hold that it partakes of the nature of a health ordinance. It is a police ordinance, notwithstanding the statement therein contained that it is for the preservation and promotion of the peace and good health of the citizens of the City of Union.

In September, 1936, the respondent purchased the lot of land hereinbefore described, on which was standing at the time an old, dilapidated, tin and wood building, and which constituted a fire hazard and detracted materially from the appearance of the vicinity. It was generally known in the neighborhood the purpose for which respondent was buying the property. He removed the old building standing on the property, and erected on the lot a neat brick and glass building at a total cost, including the purchase price of the lot, of over $7,500.00. He complied with the license laws and all o t h e r regulations of the City of Union, and opened his Bar-B-Q stand for business on December 1, 1936, and has continued to operate it under a license from the city since that time. A substantial portion of deponent's business, of which the ordinance if declared constitutional would deprive him, is done after the hour (11 o'clock, p. m.) at which under the ordinance he would be re-. quired to close, except on Saturday night, when the closing hour is 12 o'clock. Prior to the enactment of this ordinance, respondent's place of business was kept open until 2 or 3 o'clock in the morning. Operating a Bar-B-Q stand, that is, a place of business where that which passes for food, soft drinks, tobacco, candies, ice-cream, etc., is sold, is a lawful and legitimate business. The operation of a particular and certain Bar-B-Q stand may become a nuisance if not oper-

ated in a decent, respectable, quiet, and peaceable manner, in keeping with the peace and good order of the community.

It is not claimed that the respondent or any employee has ever been charged with disorderly conduct or other conduct not in keeping with the peace and good order of the community, but that the patrons have disturbed the peace and good order, and interfered with the rest of especially the Purcell family by boisterous conduct, loud talking, and laughing, frequently accompanied with profane and obscene language and dirty jokes which were heard to emanate from automobiles parked in or near the driveway between the Purcell residence and the Bar-B-Q building; that there was considerable sounding of automobile horns to attract the attention of employees in order to obtain "curb service." Some arrests were made there by the policemen of the appellant for drunkenness and disorderly conduct. It would appear from the affidavits in the record that about the only residents of the vicinity who have been disturbed and damaged by patrons of respondent are the ones occupying the homes immediately adjacent to the Bar-B-Q stand lot. The record is replete with affidavits of other residents of the vicinity that the business of respondent was conducted in an orderly manner, and that they had not been disturbed or annoyed by either the respondent and his employees, or the patrons of the Bar-B-Q stand.

That there will become noise such as loud talking and laughing which is greatly accentuated by the otherwise "stillness of the late hours of the night," and occasionally breaches of the peace accompanied by objectionable language, in and around a Bar-B-Q stand, especially where curb service is rendered on the lot or premises, is known from observation and the history of the operation of this business; and such will occur despite the efforts of the owner or proprietor of the stand to conduct his business with a minimum of disorder.

We approach a decision of this case with a sympathetic ear and mind for those who reside adjacent to this barbecue

lot. However, it has generally been conceded that the encroachment of business in a residential section of a town or city, except of course where the business encroachment is just one building such as a "corner grocery store," where it cannot be reasonably anticipated that business will expand and require additional property and space, is beneficial to the property owner in the enhancement of the value of his land, though for use as a dwelling or home the value depreciates. If sentiment for a homesite is allowed to control, or if a few residents in a given area refuse to bow to the demands of business and continue to reside in such area, and a city can by valid ordinance declare such area a "residential area" notwithstanding the fact that places of business exceed in number the buildings occupied as homes, then it must be conceded that there would not be any expansion of the business area of cities, especially if the city ordinance went further and fixed the opening and closing hours of a legitimate business conducted in such area.

We are not unmindful that many a thing has been done in the name of progress that it is better should not have been done. We have seen beautiful oak trees which God has nurtured, and required fifty or more years to grow, ruthlessly removed by their roots, in the name of. Progress. We have seen beautiful and historic residences demolished, and in their stead and place springs up a modern filling station, and in the name of Progress, though, in fact, business and the "almighty dollar."

Economic and social progress and changes reflect themselves in the interpretation of the law. These various forces are inescapably interlinked. The present case is an illustration of a situation brought about by entirely new conditions. But it is fully covered by fundamental constitutional principles that only need interpretation in the light of today's facts.

If the ordinance under discussion is a valid and reasonable exercise of the general power vested in towns and cities under our statutory law, and as circumscribed by the Consti-

tution of the State, then respondent cannot complain. If, on the other hand, the ordinance is unreasonable as defined by this Court, or if it contravenes any of the constitutional provisions invoked in this appeal, then it should and will be declared null and void.

The writer asks indulgence for quoting so copiously from the opinion in the case of *City of Orangeburg v. Farmer,* filed July 15, 1936, and reported in 181 S. C., 143, 186 S. E., 783, but we see no reason for restating the law in different language. Quoting, 181 S. C., 143, at page 148 *et seq.,* 186 S. E., 783, 784:

"The first inquiry: Is the ordinance in question reasonable?

"The decisions in our State for a long period adhered to the rule that the question of reasonableness or unreasonableness of an ordinance was entirely for the legislative body enacting it, and only when the same was clearly in conflict with some constitutional or statutory inhibition would the same be declared void. Among the decisions which set forth this rule, are *City Council of Charleston v. Ahrens,* 4 Strob., 241, 15 S. C. Reprint, 126; *City Council of Charleston v. Wentworth St. Baptist Church,* 4 Strob., 306, 15 S. C. Reprint, 160.

"New conditions gave rise to new problems of government, and it was in later years found that such rule would not stand the test of modern civilization. By the exercise of such arbitrary power the municipalities of the State could in effect deny citizens substantial rights, which are necessary in many cases, to the preservation of life and liberty, and, in practically all cases, to the pursuit of happiness. This Court, mindful of these changed and changing conditions, in the case of *City of Columbia v. Alexander,* 125 S. C., 530, 119 S. E., 241, 243, 32 A. L. R., 746, held that where an ordinance of a city attempted to prevent one from engaging in a lawful and legitimate occupation, that such ordinance could be challenged on the ground that it was unreasonable,

and therefore void. Mr. Justice Cothran, writing the opinion of the Court in *City of Columbia v. Alexander, supra,* in his usual able style, discussed quite a number of cases having to do with ordinances of cities, heretofore passed upon by this Court, and with reference to the statement in the opinion in the case of *Town of Darlington v. Ward,* 48 S. C., 570, 26 S. E., 906, 38 L. R. A., 326, 'Nor can any ordinance of a municipal corporation, within the power conferred by the Legislature, and not in conflict with the laws and constitution of the State, be impeached in a Court for unreasonableness,' had this to say:

" 'However broad the statement contained in the *Darlington v. Ward case* may be considered, the opinion clearly foreshadows the conclusion subsequently reached by the Court: That the unreasonableness of an ordinance may be so great as to violate constitutional privileges. *State v. Earle, 66* S. C., 194, 44 S. E., 781. *Thomasson v. Southern Railroad, 72* S. C., 1, 51 S. E., 443.

" 'It cannot be denied that the enforcement of the ordinance will seriously impair, if not destroy, the defendant's lawful business. Upon its face that appears to have been the purpose of the ordinance.'

"This doctrine was reaffirmed in the case of *Huffman et al. v. City of Columbia et al.,* 146 S. C., 436, 144 S. E., 157. These two cases both deal with transportation in the city of Columbia, but clearly demonstrate the turn of modern decisions in connection with matters of construction of municipal ordinances.

"We find the Court applying this principle to other situations which are equally as vital to the welfare of the citizens of the State, and in the case of *Henderson v. City of Greenwood, 172* S. C., 16, 172 S. E., 689, the Court holds invalid an ordinance of Greenwood which forbade the erection of a structure within 200· feet of any railroad crossing within the city limits. In that case, Honorable W. C. Cothran, acting associate Justice, goes fully into the question of

the right of this Court to declare an ordinance unconstitutional on the ground that the same is unreasonable, and firmly imbeds this principle in our law.

"The doctrine is further reiterated in the case of *State (City of Charleston) v. Grant,* 174 S. C., 195, 177 S. E., 148."

In *Kirk v. Board,* 83 S. C., 372, 378, 65 S. E., 387, 392, 23 L. R. A., N. S., 1188, quoted with approval in *City of Columbia v. Alexander,* it is stated: "It may be observed, also, that, with regard to the extent to which the Court will inquire into the reasonableness or necessity of such law, the Courts place laws regulating lawful business enterprise in a class separate and distinct from those enacted to protect the public health."

That the operation of a Bar-B-Q stand is a lawful business enterprise cannot be gainsaid. That there will be some noise and misbehavior on the part of certain of the patrons of this business seems to be inevitable, just as in every congregation of people open to the public there is frequently one disorderly. Even in and around churches, experience proved the necessity of enacting a special statute carrying severe punishment for disturbing religious worship. So, the place at which a lawful business enterprise may be engaged in may determine whether it is or is not a nissance, and whether up to a certain hour of the night it is not a nuisance. Just as was said in reference to the location of a livery and sale stable in the case of *Douglass v. City Council,* 92 S. C., 374, 75 S. E., 687, 49 L. R. A., N. S., 958, located in one place, it would be a nuisance *per se,* but in another place it would not be a nuisance, and this would be true regardless of how it was built or kept, because of many objectionable features which are inevitably incident to its operation. We must not lose sight of the fact, however, that laws or ordinances regulating lawful business enterprises are in a separate class from those enacted to protect the public health.

In the last analysis, is the ordinance so unreasonable in

its definition of what constitutes a "residential area" as to be arbitrary and capricious?

We have carefully read the pleadings and affidavits, and noted the exhibits in the record, and cannot say that the Circuit Judge erred in his findings of fact or his conclusions of law. Under this ordinance, so long as the Purcell residence on the south, and the Wood residence on the north, are maintained as places of residence, the respondent could never conduct the business of a Bar-B-Q stand on his property, except within the permissive hours; whereas, if he could exchange lots with any owner on the east side of North Pinckney street and in the same block, he would not be within a "residential area." Again, if either the Purcell residence or Wood residence be abandoned as places of residence, the respondent's place of business would not be within a "residential area."

The respondent, by the ordinance, is deprived of a substantial use of his property, not by reason of his conduct, but of the alleged conduct of the patrons of his place of business. We assume that the appellant has an ordinance against the unnecessary sounding of automobile horns, a practice on the part of some automobile drivers which is most annoying, and the ordinance against which practice is but seldom enforced in the various towns and cities of the state. We assume that the appellant also has an ordinance against loud and boisterous conduct, cursing, the use of profanity, and disorderly conduct generally, and that the violation of these ordinances extend to the city limits. It is equally the duty of a police system to preserve peace and good order in even a wholly residential section of a city as in the business section. Certainly where the site or locus of frequent violations of the peace and good order ordinances of appellant is within one-half block of its strictly business area, the remaining residents would have the right to expect that these ordinances will be enforced. And the enforcement of such ordinances will remedy most of the evils sought to be reached by the present ordinance.

We find that the ordinance in question, in so far as it defines a "residential area," is unconstitutional in that it is unreasonable and deprives the respondent of the lawful use of his property without due process of law.

The decree appealed from is affirmed.

MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. ACTING ASSOCIATE JUSTICE E. C. DENNIS dissents.

MR. CHIEF JUSTICE STABLER and MR. JUSTICE CARTER did not participate on account of illness.