17034

J. C. JAMES, Appellant, v. THE CITY OF GREENVILLE, Respondent

(88 S. E. (2d) 661)

566

*Messrs. J. D. Lanford* and *William I. Bouton,* of Green-ville, *for Appellant,*

*W. H. Arnold, Esq.,* of Greenville, *for Respondent,*

July 20, 1955.

BAKER, Chief Justice.

This appeal arises under the Zoning Ordinances of the City of Greenville. Said City, in July, 1944, adopted a plan of zoning in conformity with the state law. At that time the real estate here involved was not within its corporate limits.

Petitioner purchased his property located at No. 3000 Augusta Road in the year 1945, and commenced the operation of a trailer court thereon in February, 1947. What is ordinarily referred to in Greenville as the Augusta Road area, which includes Petitioner's property, was annexed to the City of Greenville as of January 1, 1948.

The City rezoned the Augusta Road area February 14, 1950, and Petitioner's property was placed in the "A," Single Family District. This is the most restricted district, permitting only single family residences. As we go down the alphabet designating the various Zoning Districts, the restrictions become less. A trailer court, under the Zoning Ordinances, is not permitted until the "G" Business District is reached.

Petitioner was notified May 11, 1950, by the City Building Commissioner, who was administering the Ordinance, that the use of his property constituted a non-conforming use and that such use would have to be discontinued after February 14, 1951. Petitioner was subsequently notified by the Building Commissioner on August 28, 1950, that any

addition or improvement to any building or trailer would have to be removed by February 14, 1951.

Petitioner appealed from the action of the Building Commissioner to the Board of Adjustment which had been created pursuant to Section 7396 of the 1942 Code, Sections 47-1007 to 47-1015 of the 1952 Code, and this Board, on December 21, 1950, sustained the action of the Building Commissioner.

Petitioner then appealed to the Court of Common Pleas, and also filed his Summons and Petition with the Court of Common Pleas under the authority of the above stated Code Section, and on April 12, 1951, Honorable E. H. Henderson, the then Presiding Judge, under the provision of Section 7396 of the 1942 Code, referred the matter to the Master for Greenville County "to take testimony and to hear and determine all issues of law and fact with leave to report and recommend his findings to this Court." The Master duly heard the matter and by his Report dated May 27, 1953, recommended that the Petition and Appeal be dismissed and that such Decree as may be necessary to discontinue his trailer court business be handed down.

Petitioner filed Exceptions to the Report of the Master, which Exceptions were substantially the same as the Exceptions now presented to the Court. The Appeal was heard by Honorable J. Robert Martin, Jr., and on July 19, 1954, he confirmed the Report of the Master and made it the judgment of the Court and ordered Petitioner to discontinue the operation of his trailer court on or before August 23, 1954. Within due time, Petitioner filed a Notice of Intention to Appeal to this Court from the Order of Judge Martin. The Petitioner contends in substance that he was operating a legitimate business before the Augusta Road area was annexed to the City of Greenville, and the application and administration of the Zoning Ordinance in question is arbitrary and amounts to a taking of his property without just compensation or without due process of law, and that

the zoning in question amounted to what is commonly referred to as spot zoning. The Respondent denies all of the contentions of Petitioner and contends that the Zoning Ordinance is reasonable and the action of the City officials proper.

The Petition of appellant appearing on pages 5, 6 and 7 of the Transcript of Record will be reported with this opinion; and immediately preceding the taking of testimony before the Master in Equity for Greenville County, there appears the following:

"Pursuant to an Order of the Court in the above entitled case, a reference was held before me this 26th day of June 1951, and the following testimony was taken. By consent the testimony was taken in shorthand by Mary F. Howard, signatures of witnesses dispensed with, and her reasonable charges therefor to be taxed as a part of the costs in the case.

"By Mr. Lanford: As this matter now stands, it is both by way of Appeal from the Adjustment Board, created under the Ordinance of the City of Greenville Zoning Commission, to the Court of Common Pleas and also enlarged by additional allegations to which a Summons was attached. But since the matter has been referred and this being a Trial *De Novo* pertaining to one and the same subject matter and without waiving any rights given the Petitioner under the Ordinance by an Appeal, the Petitioner does agree to waive irregularities in the manner of hearing before it and the conduct of its hearing.

"By Mr. Walker: As this matter now stands and as we go forward, it is a Trial *De Novo* on all issues raised in your Appeal and the Master will hear the matter as a Trial *De Novo*.

"I certainly do not interpret this to be any other than one action.

"Any irregularities of procedure are waived, but the Petitioner does not waive any of his legal rights, with regard to the Zoning Law of the City of Greenville or its application to this matter."

At the date of the taking of the testimony in this case, June 26, 1951, the appellant was a man 72 years of age. His life work had been that of a farmer until 1946. The land here involved contains a little more than one acre, and is known as 3000 Augusta Road. In 1945, appellant purchased this property, at which time there was situate thereon a two-story wooden residence, for the sum of $9,000.00. He converted this residence, after adding two rooms thereto, into three complete apartments, which have been rented at all times, and in June, 1951, were netting him $125.00 per month. In the fall of 1946, at an expense to him of approximately $3,300.00 he equipped and established on the remainder of the property a trailer court which will accommodate twenty-five trailers, nine of the trailers being owned by appellant, and the remaining trailers are owned by the people who occupy them. When there are unoccupied spaces, he rents to tourists who own their trailers, but not otherwise, except "sometimes when they get in a pinch" he will let a transient come on the court with his trailer for one night, but such transient is not furnished water. The income from this trailer court nets him between $300.00 and $400.00 per month, which is in addition to the $125.00 per month he received from the apartments thereon.

Appellant's trailer court meets every requirement of the State Board of Health, of which fact respondent has been advised, but notwithstanding this, and without any claim on the part of respondent that it is not properly conducted or in anywise creates an unsanitary situation, or, that is, there is no testimony in the record to this effect, respondent through its officers demands that he abandon the present usage of his property due to a zoning ordinance passed by respondent in 1945, as amended on February 14, 1950.

There is testimony of expensive residences in the vicinity of appellant's property, but no testimony that the appellant's trailer court affects the value of those residences. In fact, on *cross-examination* of the appellant, and nowhere else in

the record does anything thereabout appear, is the following:

"Q. The operation of this trailer court in the vicinity would tend to effect (affect?) the value of those residences?

"A. I don't think so. We don't bother them, no more than the looks—but what are you going to do with the ugly man, you can't cut his head off—"

Nor does the record disclose when these expensive residences were built, whether prior to the establishment of appellant's trailer court and his conversion of the dwelling which was situate thereon into three apartments, or thereafter, although the only reasonable inference from the testimony as a whole is that some were built thereafter; and the record is likewise devoid of any testimony that the general welfare, morals or health of any resident of the respondent is injuriously affected. Yet, the Master's report to the Circuit Court, which was approved and adopted by the Judge thereof, makes this positive finding of fact, and we quote: "I find further under all of the facts and surrounding circumstances that it would be contrary to the general welfare and the morals of the people in that neighborhood to permit this trailer court to continue operation." And later in this report is a finding of fact "that the action of Respondent in requiring Petitioner to discontinue the operation of his trailer court business is proper and reasonable, and to the best interest of the general health and welfare of the inhabitants of Respondent and particularly those in the surrounding neighborhood."

In the paragraph immediately preceding the one from which the first quotation above is taken, appears a statement in the report of the Master reading: "By consent of counsel I viewed the premises in question, although I have been familiar generally with the area for a great many years"; and presumably the statements in the Master's report above referred to represent merely his conclusion thereabout. But such does not constitute testimony where he would be subject to cross-examination, and rebuttal testi-

mony could be offered. He offers no basis for such conclusion, and it is therefore only his personal opinion after viewing the premises. As to "general health and welfare," the Master's opinion thereabout is more than offset by the fact that after a thorough inspection of these premises, an investigator for the State Board of Health found absolutely to the contrary, and we can well assume that such investigator had training sufficient to make him competent to pass upon this issue. As to the morals of the people in that neighborhood being affected by the continuation of this property as a trailer court, such has to be pure conjecture, but thus far, so far as this record discloses, there has been no change therein. Morals are possessed by people who are forced by circumstances to live in trailers just as by people who reside in fine houses. There is not in the entire record a scintilla of evidence that the use for which this property has been utilized has in anywise affected the "general welfare and the morals of the people in that neighborhood"; and this is true as to its future use for the same purpose if operated on its present sanitary and moral standard.

As aforestated, the only testimony in the record is that it does not affect the value of the fine residences in that neighborhood. On the other hand, to compel the appellant to abandon his present use thereof would entail a loss to him of approximately two-thirds of the value of the improvements he has placed thereon, and a considerable decrease in the value of the lot with such limited usage. The record does not disclose what it would cost the appellant to build single residences on this property, assuming that he has the "wherewithal" to do so, nor what his income therefrom would be. It is quite evident that the value of this property is dependent upon the usage it can be put to, and that its present usage is the most advantageous one from the standpoint of income.

Because it may be overlooked by the writer, he desires to here remark upon how impressed he is with the apparent

honesty and respect for the truth possessed by the appellant throughout his testimony.

We now enter upon the worst feature, if such is possible, of this proposed (and thus far successful) taking and deprivation of the appellant of his property by the respondent, without, not just compensation, but without any compensation. At the time the appellant purchased this property, and at the time he improved it and established a trailer court thereon with all of the sanitary and required precautions, and at the time he converted the two-story residence thereon into three complete apartments, adding two rooms to said residence, this property was not in the corporate limits of the respondent. The area in which this property is situate was not annexed to respondent until December 1, 1947, whereas appellant's trailer court had then been in operation as such since February 1st of that year. Only a few minor improvements have been made thereon since this area was annexed to respondent.

The respondent in this case relies wholly on its Zoning Ordinance, and therefore if the application of such ordinance is arbitrary and unreasonable in so far as it affects the property here involved, and the enforcement thereof amounts to a taking of appellant's property or depriving him of his property, without just compensation, then such Zoning Ordinance is unconstitutional, being in violation of Article 1, Sections 5 and 17 of the Constitution of this State.

We here set out the pertinent portions of the respondent's ordinances, omitting Section 6 of Article XIV—Board of Adjustment, since the Master in Equity heard the matter as a "Trial *De Novo*," after the Board of Adjustment had refused the appellant any relief, even to placing this property into an "E" zone, that is, commercial zone.

"Excerpts From Zoning Ordinance, Greenville, South Carolina:

"An Ordinance to promote the health, safety, morals and the general welfare of the inhabitants of the City of Green-

ville, South Carolina, and to regulate and restrict the location and use of buildings, structures and land for trade, industry, residence and other purposes; to regulate and restrict the erection, construction, reconstruction or alteration of buildings and structures; to regulate and restrict the height, number of stories, and size of buildings and structures, and the size of yards and other open spaces surrounding buildings; to regulate and restrict the density of population, and for all said purposes to divide the city into districts; to prescribe penalties for the violation of its provisions; to provide for changes and amendments; to provide for its enforcement; to provide for a Board of Adjustment, and to prescribe their powers and duties.

' "Article I—Definitions: Non-Conforming Use:

"Section 32. Any building or land lawfully occupied by a use at the time of passage of this Ordinance or amendments thereto which does not conform after the passage of this ordinance or amendments thereto with the use regulations of the district in which it is situated.

"Article XII—Non-Conforming Uses:

"Section 1: The lawful use of land which does not conform to the provisions of this ordinance shall be discontinued within one (1) year from the effective date of this ordinance, provided, however, that the use of land which becomes non-conforming by reason of a subsequent change in this ordinance shall also be discontinued within one (1) year from the date of the change.

"Article XVIII—Interpretation, Purpose and Conflict:

"Section 1: In interpreting and applying the provisions of this ordinance, they shall be held to be the minimum requirements for the promotion of the public safety, health, convenience, comfort, morals, prosperity and general welfare. It is not intended by this ordinance to interfere with or abrogate or annual any ordinance, rules, regulations, or permits previously adopted or issued, and not in conflict with any of the provisions of this ordinance, or which shall

be adopted or issued pursuant to law relating to the use of buildings or premises, and likewise not in conflict with this ordinance; nor is it intended by this ordinance to interfere with or abrogate or annul any easements, covenants or other agreements between parties, except that if this ordinance imposes a greater restriction, this ordinance shall control.

"Article XIX—Amendments:

"Section 1. The City Council may from time to time on their own motion or on petition, amend, supplement, change, modify or repeal by ordinance the boundaries or districts or regulations, or restrictions herein established. Any proposed amendment, supplement, change, modification or repeal shall first be submitted to the City Planning and Zoning Commission for its recommendations and report. If the City Planning and Zoning Commission makes no report within thirty (30) days, it shall be considered to have made a report approving the proposed amendment, supplement, modification or change. * * *"

The pertinent portion of the sections of the Constitution above referred to read:

"The privileges and immunities of citizens of this State and of the United States under this Constitution shall not be abridged, nor shall any person be *deprived* of * * * property without due process of law, nor shall any person be denied the equal protection of the laws." (Emphasis added.)

"* * * Private property shall not be taken for private use without the consent of the owner, nor for public use without just compensation being first made therefor."

As a part of this opinion there shall be reproduced the sketch of this property, etc., on page 38 of the Transcript of Record, and at this juncture.

It is unnecessary to expend but little time in discussing whether the zoning line shown above amounts to "spot zoning," it being so obvious that it is such, and apparently for the chief purpose of including the property of the appellant. Immediately to the south of appellant's property there is one small lot also included, the ownership of which is not disclosed by the record, but adjoining and to the south, is a "Drive-In," and its northern line is the dividing line between the "A" District and the "E" District. This was done

by crooking the dividing line upward as it reached the "Drive-In" property. An "E" District is a commercial district. So in this short space or distance there is a jump from "A" to "E," which reminds the writer of the old saying: "It is hard to tell the distance a frog will jump from where it sits." (The appellant in his appeal to the Adjusting Board, in an attempt to somewhat diminish his loss, requested that his property be at least placed in the "E" District, but even that was denied him. So, if the writer hereof is considered rather caustic, it is not without basis.)

In the case of *Best & Co. v. Incorporated Village of Garden City*, 247 App. Div. 893, 286 N. Y. S. 980, an ordinance was held void as to owners who had made expensive improvements prior to passage of the ordinance. *The Court of Appeals of Maryland, Amereihn v. Kotras*, 194 Md. 591, 71 A. (2d) 865, 868, in announcing a yardstick by which nonconforming uses of property are attempted to be enforced, has spoken thusly:

"It is well established law that if a person, prior to the time zoning regulations are effective, commences to build on his property a building for the purpose of conducting light manufacturing (as in this case) and expends money in the erection of such a building, or in partially erecting such a building, subsequent zoning regulations cannot prevent him from completing the building and conducting light manufacturing therein."

In *Burmore Co. v. Smith*, 124 N. J. L. 541, 12 A. (2d) 353, the court held that the use which owners made of their property at the time of the passage of a zoning ordinance becomes the authoritative standard for determining the use which they may continue to make of their property after the passage of the zoning ordinance. See Yokley's Zoning Law and Practice, Nonconforming Uses, particularly Sections 150, *et seq*.

We think it unnecessary to cite further authority, especially in the light of the fact that all decided cases to which

we have had access, and coming from the various states of the Union, hold that notwithstanding a zoning ordinance, one's property may be continued to be used for the same purpose it was being used at the time of the passage of a zoning ordinance.

Apparently the word "taking" has been given a fairly broad construction or meaning. In 18 Am. Jur., Eminent Domain, Section 132, it is indicated that the constitutional prohibition against the taking of property was intended to protect all of the essential elements of ownership which make property valuable, and among these elements is the right of use. It is also stated that there is a taking of the owner's property with any act done which substantially restricts or abridges the right of owner. It is further stated that there is a taking when the act involves an actual interference with, or disturbance of, property rights, resulting in injuries which are not merely consequential or incidental.

In the case of *Gasque v. Town of Conway,* 194 S. C. 15, 8 S. E. (2d) 871, 873, there was an action brought to recover damages against the Town on account of refusal to issue a building permit. One of the issues involved was whether the Town's action in refusing the permit amounted to a taking. While the Court held in this particular case that the Town's action did not amount to a taking, the Court's opinion does indicate that the "taking" has a fairly broad meaning. We quote from that opinion:

"The Constitution of this State (Art. 1, Sec. 17) provides that 'private property shall not be taken * * * for public use without just compensation being first made therefor.'

"In construing this provision of the Constitution, we have held, along with many other courts, that an actual physical taking of property is not necessary to entitle its owner to compensation. A man's property may be taken, within the meaning of this provision, although his title and possession remain undisturbed. To deprive him of the ordinary beneficial use and enjoyment of his property is, in law,

equivalent to the taking of it, and is as much a 'taking' as though the property itself were actually appropriated.

"Property in a thing consists not merely in its ownership and possession, but in the unrestricted right of use, enjoyment, and disposal. Anything which destroys one or more of these elements of property to that extent destroys the property itself. It must be conceded that the substantial value of property lies in its use. *Henderson v. City of Greenwood*, 172 S. C. 16, 172 S. E. 689. If the right of use be denied, the value of the property is annihilated, and ownership is rendered a barren right.

"The constitutional prohibition against taking private property for public use without just compensation must have been intended to protect all the essential elements of ownership which make property valuable, including, of course, the right of user, and the right of enjoyment. * * *

"What is a 'taking' of property within the constitutional provision is not always clear; but, so far as general rules are permissible of declaration on the subject, it may be said that there is a taking where the act involves the actual interference with, or the disturbance of, property rights, resulting in injuries which are not merely consequential or incidental. * * *

"We agree with appellant that constitutional powers can never transcend constitutional rights, and that the police power of a municipal corporation is subject to the limitation imposed by the Constitution. * * * "

Apparently, in the *Gasque case*, the Court gave some emphasis to the fact that the Town's action was more of a negative action than an affirmative one, and at first blush it may appear that the present case is in the same category in that just as in the *Gasque case* the municipality refused to issue a permit. But there is, of course, this vast difference. Here the appellant was putting his property to the usage which the respondent now claims is a nonconforming use, prior to the enactment of the zoning ordinance. And not only

that, but prior to its annexation to the respondent. We digress momentarily. The Master in Equity of Greenville County states in his order that petitioner (appellant) contends that his property should be placed in the "E" zone. We have hereinbefore made mention of his request to this effect. After making such statement as to what petitioner (appellant) contended, the Master says that he finds that petitioner is bound by the zoning ordinance of 1945, and, continuing, "In fact, he states in his written brief 'This matter is being tried under the City Ordinances dated 1945.' Under this Ordinance a trailer court is not permitted except in the 'G' District. The testimony shows that the nearest 'G' District to Petitioner's property was in the vicinity of Claussen's Bakery and the Greenville Senior High School."

It will be seen from the foregoing that the Master utterly failed to grasp what appellant was undertaking to do. Appellant was under the impression that the ordinance was enforceable, and that even if respondent placed his property in an "E" District, he could not continue to conduct a trailer court there, but such would probably save him considerable loss in the sale of his property if he was forced to abandon its then use, and sell same.

Reverting after digressing, if the respondent had merely refused to issue appellant a permit to operate his trailer court, some of the statements in the Gasque opinion could be considered as authority for respondent's position, but such is not the case. There was affirmative action on the part of the respondent. The respondent, soon after the annexation had been effected, proceeded to enact an amendment to its Zoning Ordinance of 1945 so as to include appellant's property, and it was thereafter that it acted negatively by refusing a permit to appellant to continue to operate his trailer court. Factually, the present case and the Gasque case are far apart, so it will serve no purpose to make further reference to the facts in the Gasque case, except to point out that the opinion therein makes no reference to Section 5,

Article I of the S. C. Constitution; and that in the present case, the order appealed from orders the appellant to discontinue the use to which he was, and had been prior to its annexation to respondent, applying it.

The Master's report contains the statement: "The City is not taking the property. It is merely directing him as to the use to which the property may be put." The respondent (City of Greenville) didn't have to go into actual possession of appellant's property in order for its action to constitute a "taking." See the quotations hereinabove from *Gasque v. Town of Conway,* 194 S. C. 15, 8 S. E. (2d) 871. Also see *Sheriff v. City of Easley,* 178 S. C. 504, 183 S. E. 311.

We are reminded of the Biblical story related in I Kings, Chapter 21, where Ahab, King of Samaria, coveted a small vineyard owned by Naboth, because it was near unto his house, and offered Naboth therefor its worth in money, or even a better vineyard, all of which Naboth refused. This caused Ahab to become "heavy and displeased" and he "would eat no bread." However, Jezebel, the wife of Ahab, learning of the cause of his apparent trouble, arranged to have Naboth, in the presence of a large gathering, accused by two witnesses of having cursed God and the King, and thereupon Naboth was carried without the city where the gathering was had and stoned to death; and Jezebel thereby delivered the possession of the vineyard to Ahab.

Whether the ordinance involved in this case is considered from the standpoint of eminent domain, the theory upon which the case was apparently tried in the lower Court, or from the standpoint of police power, it is, in so far as it applies to appellant's property, in violation of the two sections of the Constitution referred to hereinabove; and each case, as admitted by respondent's brief, has to be determined on its own particular facts.

It is the opinion of this Court that the exceptions of the appellant discussed herein should be sustained and the judgment of the lower Court reversed.

## Petition of Appellant

### I

That your petitioner is a citizen and resident of the County of Greenville, State of South Carolina; that the respondent is a body politic located in said County and State; that the property involved in this proceeding is located in said County and State; that on May 11, 1950, and August 28, 1950, said respondent by its agent and servant, the City Building Commissioner or Inspector, issued certain notices to the petitioner to cease operating the "Try Me" Trailer Court, located at 3000 Augusta Road, Greenville, S. C.; that on November 29, 1950, said petitioner filed his Notice of Appeal with Board of Adjustment for the City of Greenville; that the said Board of Adjustment conducted a hearing of the said appeal on December 21, 1950, and rendered its decision on December 29, 1950, said decision being in favor of the Building Commissioner or Inspector, and the same denied said appeal of the petitioner.

### II

That said Board of Adjustment erred in finding and holding in said decision that no hardship would be inflicted on the petitioner, when said Board should have found and held that the enforcement would constitute a hardship in view of the following particulars:

(a) The present "National Emergency";

(b) The scarcity of materials for building and construction purposes;

(c) The restrictive market demand for this particular property;

(d) The age and state of health of the petitioner, and

(e) The dismantling and removal of present improvements used in connection with the operation of said Trailer Court.

### III

That the said Board of Adjustment erred in not sustaining the position of the petitioner to the effect that the en-

forcement of said Zoning Ordinance would be taking property without due process of law and without making just compensation for such taking in direct violation of the Constitution of the State of South Carolina, and the United States of America, in the following particulars:

(a) That prior to the inclusion of the Augusta Road area into the City of Greenville, the petitioner had for many years acquired, developed, and operated the subject Trailer Court, and had gone to considerable expense of advertising and building up the business at said address, and the enforcement of this Ordinance would destroy his business; and

(b) That the petitioner, for a number of years, spent considerable sums of money from time to time in equipping and improving the subject property for trailer court purposes which created a vested interest in the same prior to the inclusion of said section within the City of Greenville, which may not be summarily destroyed by enforcing the abandonment of the aforesaid business in violation of the Constitution of the State of South Carolina and the United States of America.

## IV

That said Board further erred in holding that the unsworn petition offered in evidence at said hearing was competent testimony, and in considering the same as evidence by the declarations set forth in said decision, when the Board should have sustained your petitioner's objection to the introduction of said petition on the ground that it was hearsay testimony.

## V.

That said Board of Adjustment was not legally constituted in accordance with the requirements of said Ordinance which requires that the Board shall consist of five (5) members and that said Board shall keep minutes of its proceedings, showing the vote of each member upon each question, or if absent or failing to vote, indicating such fact, and said decision shows on its face that only four (4) members of said Board were present, and the absent member nor his

vote was accounted for; that at said hearing no witnesses were sworn and no competent testimony was introduced; that the very wording of Article XIV of the said City Zoning Ordinance contemplates a judicial proceeding with witnesses appearing under oath to comply with the recognized procedure for a judicial inquiry; that the manner of the so-called hearing of the appeal in receiving and considering statements, a petition, and declarations of interested parties unsworn to, and receiving and considering hearsay testimony contrary to all recognized rules of judicial procedure in South Carolina, and contrary to the Ordinance of the City of Greenville known as the Zoning Ordinance which created the said Appeal Board, and thereby attempting to pass upon the property rights of the petitioner, if allowed to stand, would constitute a taking from the petitioner of a valuable property right without due process of law as provided in the Constitution of South Carolina, 1895, Article I, Section V, and the Constitution of the United States of America 1787, Amendments Articles V and XIV.

January 25, 1951.

TAYLOR, J., concurs.

STUKES, OXNER and LEGGE, JJ., concur in result.

LEGGE, Justice (concurring in result).

The authority of a municipality to enact a zoning ordinance restricting the use of privately owned property is founded not in eminent domain, but in the police power. *Owen v. Smith*, 216 S. C. 382, 58 S. E. (2d) 332. One is not entitled to compensation for the restriction of use, or for deprivation, of his property as the result of the proper exercise of the police power. 29 C. J. S., Eminent Domain, § 6, p. 784; *Arnold v. City of Spartanburg*, 201 S. C. 523, 23 S. E. (2d) 735. But this power is not unlimited, and does not extend to the suppression or removal from a residence district of a lawful business already established there, in the absence of a factual showing that the continuance of such business would be detrimental to the

public health, safety, morals or general welfare. 58 Am. Jur., Zoning, Section 148, page 1022; *Standard Oil Co. v. City of Bowling Green,* 244 Ky. 362, 50 S. W. (2d) 960, 86 A. L. R. 648; *Jones v. City of Los Angeles,* 211 Cal. 304, 295 P. 14; *Adams v. Kalamazoo Ice & Fuel Co.,* 245 Mich. 261, 222 N. W. 86; *State v. MacDuff,* 1931, 161 Wash. 600, 297 P. 733; *People v. Miller,* 304 N. Y. 105, 106 N. E. (2d) 34; *State of Washington ex rel. Seattle Title Trust Co. v. Roberge,* 278 U. S. 116, 49 S. Ct. 50, 73 L. Ed. 210, 86 A. L. R. 654. The contrary view expressed in *Dema Realty Co. v. McDonald,* 168 La. 172, 121 So. 613, and in *Standard Oil Co. v. City of Tallahassee,* 5 Cir., 183 F. (2d) 410, cited in the Master's report in the instant case, is not supported by the weight of authority.

The decision in *Dema Realty Co. v. McDonald* has been criticized as exhibiting "a confusion between the objects of zoning and nuisance regulation." See *Jones v. City of Los Angeles, supra.* And in *Standard Oil Co. v. City of Tallahassee, supra,* which involved the validity of a zoning law so far as it required the discontinuance of a filling station, there was a vigorous dissent by Chief Justice Hutcheson, based upon the decision in *Standard Oil Co. v. City of Bowling Green, supra,* and the *Florida cases* of *City of West Palm Beach v. Edward U. Roddy Corp.,* Fla., 43 So. (2d) 709, and *City of Miami Beach v. First Trust Co.,* Fla., 45 So. (2d) 681.

"The power to declare an ordinance invalid because ■■ it is so unreasonable as to impair or destroy constitutional rights is one which will be exercised carefully and cautiously, as it is not the function of the courts to pass upon the wisdom or expediency of municipal ordinances or regulations." *DeTreville v. Groover,* 219 S. C. 313, 65 S. E. (2d) 232, 240. But where an ordinance is clearly violative of constitutional rights, it is our duty so to declare it, for in the final analysis the question of due process is a judicial, not legislative, one. *City of Columbia*

*v. Alexander,* 125 S. C. 530, 119 S. E. 241, 32 A. L. R. 746; *Fincher v. City of Union,* 186 S. C. 232, 196 S. E. 1.

In the case before us we have nothing to uphold the ■ ordinance in its application to appellant unless it be found in its entitlement as "An Ordinance To Promote The Health, Safety, Morals And The General Welfare," etc., and the statement in Section 1 of Article XVIII that "in interpreting and applying the provisions of this ordinance, they shall be held to be the minimum requirements for the promotion of the public safety, health, convenience, comfort, morals, prosperity and general welfare." If this be taken as a legislative declaration that appellant's business is detrimental to the public safety, health, morals and general welfare, it is, as pointed out in the opinion of Chief Justice Baker, wholly without support in the evidence; on the contrary, it is thoroughly refuted by the facts as disclosed by the uncontradicted testimony. As applied to the particular locus the ordinance presents a clearly invalid exercise of the police power. *Cf. State ex rel. Warner v. Hayes Investment Corp.,* 13 Wash. (2d) 306, 125 P. (2d) 262, where an ordinance prohibiting the continued operation of an established trailer camp by restricting the use of the land was held invalid, there being no evidence that it was, as applied to the particular business involved, in promotion of the public health, safety, morals or welfare. To the same effect is *Richards v. City of Pontiac,* 305 Mich. 666, 9 N. W. (2d) 885, 889, where the court said: "In our opinion the operation of a trailer park is not a nuisance *per se.* If the trailer park proves to be a nuisance *per accidens,* then regulation may be called for. The plaintiffs, having purchased the property, expended money thereon, and operated a trailer camp prior to the existence of either of the zoning ordinances, have a vested right to operate such trailer camp in accordance with the provisions of Act No. 255, Pub. Acts. 1941, or as such act may be amended." For the rules and regulations governing the operation and maintenance of trailer parks in South Carolina, as promulgated by the State Board

of Health, see Code of Laws 1942, Volume 3, Section 5002, pages 113-114, and Code of Laws, 1952, Volume 7, pages 675-677.

STUKES, TAYLOR and OXNER, JJ., concur.